## COMMONWEALTH *vs.* GREGORY BABB.

Hampshire. December 9, 1993. - January 4, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Withdrawal. *Practice, Criminal*, Assistance of counsel. *Constitutional Law*, Assistance of counsel.

A criminal defendant who refused without good cause to communicate and cooperate with court-appointed counsel abandoned his right to such appointed counsel. [735]

INDICTMENT found and returned in the Superior Court Department on August 11, 1992.

An attorney's motion to withdraw was heard by *John F. Moriarty*, J., and the matter was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John M. Thompson* for the defendant.

*Shaun S. McLean*, Assistant District Attorney, for the Commonwealth.

*Dana A. Curhan*, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

NOLAN, J. A judge in the Superior Court allowed an attorney's motion to withdraw and ruled that the defendant had forfeited court-appointed counsel and reported the propriety of his ruling to the Appeals Court. Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We transferred the matter here on our own motion. We conclude that the defendant had abandoned his right to court-appointed counsel. From the judge's report we learn the following facts.

The defendant is charged in a five-count indictment charging him with mayhem, assault and battery by means of a dangerous weapon (knife), assault with intent to rob while

armed with a dangerous weapon, breaking and entering in the daytime with intent to commit a felony, and larceny in excess of $250. At arraignment on August 19, 1992, Mr. Alan Rubin, who was in charge of the Hampshire and Franklin district office of the Committee for Public Counsel Services (CPCS), filed his appearance for the defendant.

For the next several months, Rubin engaged in a pretrial conference with the prosecutor, joined in the filing of a pretrial conference report, presented a number of pretrial discovery motions, and pressed a motion to suppress evidence allegedly seized during a warrantless search. This motion was heard and denied by another judge in the Superior Court.

On February 16, 1993, the defendant filed, pro se, a "motion to allow withdrawal of counsel." In this motion he claimed an "irreconcilable" breakdown between himself and Rubin. He accused Rubin of failing to prepare the case properly. At the hearing on this motion on March 4, 1993, Rubin asserted that he was prepared and ready to defend the defendant. Some of the defendant's accusations were blatantly false. Rubin was a veteran trial lawyer who had tried many serious cases before the reporting judge who found him "able, competent, honorable and conscientious."

The reporting judge told the defendant that he had a right to defend himself but he "strongly advised that he not do so." The defendant said that he had no desire to defend himself and accordingly the judge treated the pro se motion as a motion for the appointment of new counsel and denied it.

One week later the defendant refiled the same motion and the judge denied it again without a hearing. On the same day, the defendant filed another "motion to allow withdrawal of counsel" in which he charged that Rubin had not called two available witnesses in support of his motion to suppress evidence, that Rubin had told him that he believed that the defendant was guilty and that he was lying, and that Rubin had "intentionally sabotaged" his defense. This motion was neither supported by an affidavit nor was it otherwise verified. The judge denied this motion.

Rubin, on March 16, 1993, filed his own motion asking to be relieved of his appointment as defense counsel. In this motion, Rubin asserted that the defendant had refused to cooperate or communicate with him or to assist in the preparation of his defense, and that during their last interview, the defendant had physically assaulted him. The judge conducted a hearing on this motion at which Rubin and the defendant were present. The judge advised the defendant of his right to testify and also of his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. Rubin was sworn and testified. The defendant declined to testify or to cross-examine Rubin. Based on Rubin's testimony, the judge found that Rubin, during the previous week, had gone to the Hampshire County jail to speak with the defendant. They were admitted to a small interview room. The defendant refused to discuss the case, expressed his ill feelings toward Rubin, and after fifteen or twenty minutes when Rubin got up to leave, the defendant shoved the table against Rubin, knocking him against the wall. The defendant then struck Rubin, bruising his cheek, and knocking off his glasses. The correctional officers came to Rubin's rescue.

The judge found the defendant to be "an intelligent and articulate young man who is quite familiar with the criminal justice system. At the time of his arrest last August he was on parole from the State of Alaska under supervision of Massachusetts parole authorities. He had been convicted in Alaska of four counts of burglary and three counts of escape and had been sentenced to an aggregate term of [twenty-two] years." He also has a long criminal record in Massachusetts extending back to 1976 when he was a juvenile.

The judge concluded that the defendant was "engaging in a tactic that is becoming all too frequent in the trial court . . . attempting to forestall his trial and disrupt the prosecution by forcing a last minute change of his court-appointed counsel [and] if he were allowed to succeed in obtaining a court-appointed replacement for Mr. Rubin, he would be attempting to force a withdrawal by that attorney before his case could be brought to trial."

It is beyond debate that an indigent defendant is entitled to court-appointed counsel for trial of a serious crime. This right is protected by the Sixth Amendment to the United States Constitution (see *Argersinger* v. *Hamlin*, 407 U.S. 25 [1972]), by art. 12 of the Declaration of Rights of the Massachusetts Constitution, and by S.J.C. Rule 3:10, as amended, 399 Mass. 1207 (1987). However, this right to appointed counsel is not absolute. It may be waived in writing (see S.J.C. Rule 3:10, § 2, as appearing in 397 Mass. 1217 [1986]). The indigent's right to appointed counsel does not include the right to dictate who shall be appointed (see *Commonwealth* v. *Drolet*, 337 Mass. 396, 400-401 [1958]). The defendant refused without good cause to proceed with Rubin and this constitutes abandonment, a term perhaps more consistent with the defendant's conduct than the judge's choice of the word "forfeiture." *Commonwealth* v. *Appleby*, 389 Mass. 359, 366-367, cert. denied, 464 U.S. 941 (1983). The record lends abundant support to the judge's findings that the defendant's complaints about Rubin were unwarranted and in some instances false.

For these reasons, we affirm the judge's allowance of Rubin's motion to withdraw and his refusal to appoint new counsel.

*So ordered.*