## Commonwealth *vs.* Mark Means.

Plymouth. February 5, 2009. - June 12, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Constitutional Law,* Assistance of counsel, Waiver of constitutional rights. *Waiver. Practice, Criminal,* Assistance of counsel, Forfeiture of right to counsel. *Attorney at Law,* Withdrawal.

Discussion of the constitutional right to counsel in a criminal proceeding, and the means by which criminal defendants may forgo that right, including voluntary waiver [88-90]; waiver by conduct, i.e., abandonment [90-92]; and forfeiture [92-93], with a consideration of the circumstances in which the doctrine of forfeiture might apply [93-96].

This court held that, conformably with the constitutionally guaranteed right to assistance of counsel in a criminal case, a defendant may be held to have forfeited his right to counsel at trial by reason of his wrongful behavior, but only after a hearing at which the defendant has a full and fair opportunity to offer evidence as to the totality of the circumstances that may bear on the question whether the sanction of forfeiture is both warranted and appropriate [96-97]; thus, where a Superior Court judge failed to conduct a hearing in accordance with such standards before determining that an indigent defendant had forfeited his right to counsel at trial by sending a blood-smeared letter to court-appointed counsel threatening serious harm to him and his family if counsel did not immediately withdraw from the case, this court reversed the defendant's judgments of conviction and remanded the matter for a new trial [98-100].

Indictments found and returned in the Superior Court Department on March 15, 2002.

A motion to dismiss counsel was heard by *Linda E. Giles*, J., and the cases were tried before her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Deborah Bates Riordan* (*Theodore F. Riordan* with her) for the defendant.

*Audrey Anderson Kachour*, Assistant District Attorney, for the Commonwealth.

*Beth L. Eisenberg & Kristen J. Graves*, Committee for Public Counsel Services, *& Robert D. Fleischner & Susan F. Stefan*,

for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

MARSHALL, C.J. We consider whether, conformably with the constitutionally guaranteed right to assistance of counsel in a criminal case,[1] a defendant may be held to have forfeited his right to counsel at trial by reason of his wrongful behavior (doctrine of forfeiture), a novel issue in Massachusetts. Cf. *United States* v. *Leggett*, 162 F.3d 237, 249-251 (3d Cir. 1998), cert. denied, 528 U.S. 868 (1999) (defendant forfeited right to counsel at *sentencing* hearing by physically attacking counsel). If so, we consider whether the trial judge properly invoked the doctrine of forfeiture in this case.

During the course of pretrial proceedings on charges of assaulting a correction officer, the defendant filed several pro se motions to discharge his first, and at all times his only, court-appointed trial counsel, and for appointment of new counsel. In one such motion the defendant disclosed both in his motion and in his affidavit in support of his motion that he had sent a letter to counsel threatening serious harm to him and to his family if counsel did not immediately withdraw from the case.[2] After a brief video conference hearing, during which the judge asked the defendant to confirm that he had sent such a letter, the judge ruled that the defendant, by his "egregious misconduct" in making the threats, had "forfeited his right to proceed to trial" with any "court-appointed attorney." She ordered the defendant to represent himself at his trial.

---

[1] The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." Article 12 of the Declaration of Rights of the Massachusetts Constitution provides in pertinent part that "every subject shall have a right . . . to be fully heard in his defence by himself, or his counsel at his election." The defendant does not argue that his right to counsel as guaranteed under .art. 12 was violated. We invited the submission of amicus briefs by interested parties. The Committee for Public Counsel Services (CPCS), the body statutorily charged with providing counsel to indigent criminal defendants, see G. L. c. 211D, has filed a brief resting its claims in part on art. 12. "While this court ordinarily restricts its discussion to the arguments made by the parties and does not address arguments of amici curiae . . . the argument presented by this amicus is sufficiently related to that of the [defendant] to warrant our discussion" (citations omitted). *Bongaards* v. *Millen*, 440 Mass. 10, 19 n.6 (2003).

[2] The letter is not included in the record appendix.

Trial commenced some weeks later, and a jury convicted the defendant of assault and battery on a correction officer and assault and battery by means of a dangerous weapon. G. L. c. 127, § 38B. G. L. c. 265, § 15A. Immediately following his convictions, the defendant was tried on indictments charging him with being a habitual criminal, G. L. c. 279, § 25, before the same jury. The defendant again requested that counsel be appointed to represent him, and the judge again denied his request. The defendant was found guilty on two charges of being a habitual criminal and sentenced to two concurrent terms of ten years in a State prison.

The defendant appealed to the Appeals Court, which rejected his claim that he was denied his constitutional right to counsel at trial. *Commonwealth* v. *Means*, 71 Mass. App. Ct. 788 (2008).[3] We granted the defendant's application for further appellate review.

We recognize that threats of violence made by a defendant against his attorney or the attorney's family may constitute "extremely serious misconduct" that may justify a finding that an indigent defendant has forfeited his right to court-appointed counsel. *United States* v. *Goldberg*, 67 F.3d 1092, 1102 (3d Cir. 1995). In light of the fundamental constitutional rights at stake, before a judge finds that a defendant has forfeited his right to counsel and imposes the extreme sanction of denying an indigent defendant the assistance of counsel at trial or otherwise, she must first conduct a hearing at which the defendant has a full and fair opportunity to offer evidence as to the totality of the circumstances that may bear on the question whether the sanction of forfeiture is both warranted and appropriate. Because the hearing conducted in this case fell short of that standard, we are constrained to reverse the judgments on the habitual criminal charges, reverse the judgments on the assault charges, and remand the case to the Superior Court for a new trial on the charges of assault and battery on a correction officer and assault and battery by means of a dangerous weapon.

1. *Background.* Because details of the proceedings are important to our conclusions, we describe them with specificity. On March

---

[3]In the Appeals Court, the defendant also argued that the trial judge erred in not reexamining the jury for prejudice and bias prior to the habitual criminal proceeding. The Appeals Court rejected that claim. *Commonwealth* v. *Means*, 71 Mass. App. Ct. 788, 797 (2008). It is not at issue in this appeal.

15, 2002, a grand jury returned indictments against the defendant charging him with assault and battery on a correction officer, G. L. c. 127, § 38B; assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (*b*); vandalism with a noxious or filthy substance, G. L. c. 266, § 103; and being a habitual criminal, G. L. c. 279, § 25. On March 27, 2002, the defendant was arraigned, and counsel was appointed to defend him. Trial was scheduled for July 21, 2003, and was then rescheduled several times.

Beginning in April, 2004, and several times thereafter, the defendant attempted to inform the court by motion of his dissatisfaction with his appointed counsel. In his first such motion, filed in April, 2004, the defendant made various claims concerning alleged shortcomings of his counsel, including that appointed counsel had failed to file certain motions, had visited the defendant only twice "for the past 25 months," and had failed to return the defendant's telephone calls. The defendant claimed that "a complete 'breakdown' of communication" with appointed counsel had occurred. On May 4, 2004, appointed counsel moved to withdraw, citing an insurmountable breakdown in communications with his client. After a hearing, the judge allowed appointed counsel to withdraw, but denied the defendant's request for new counsel. Instead, she appointed the attorney as standby counsel, and ordered the defendant to represent himself at trial.[4,5]

Over the following months, the defendant filed three pro se motions to remove his appointed standby counsel and for the appointment of new trial counsel, without action by the judge.[6]

---

[4]There is no indication in the record that at this time the defendant had made threats of any kind to his lawyer.

[5]The judge did not make any attempt to assess the defendant's complaints regarding appointed counsel, despite the defendant's multiple and specific allegations about counsel's actions. We have required, even where an attorney has an impeccable reputation, that specific inquiry be made into the nature of a defendant's precise complaint against counsel. See *Commonwealth* v. *Tuitt*, 393 Mass. 801, 804 (1985) (denial of defendant's motion for removal of counsel proper on day on which trial was scheduled to begin, where judge conducted detailed colloquy, and concluded that "these motions for a new attorney [were] no more than a delaying tactic"). See also *Commonwealth* v. *Carsetti*, 53 Mass. App. Ct. 558, 562 (2002) ("when a defendant alleges that counsel is unprepared, the judge should perform some colloquy to ascertain whether this is a dilatory tactic or whether counsel is truly unprepared").

[6]The defendant's motions each contained a description of what he perceived

In February, 2005, standby counsel moved to continue the trial, which had been scheduled for February 22, 2005. The judge held a hearing during which it appears (according to the Superior Court docket) that standby counsel was reinstated as trial counsel, and the judge allowed the motion to continue the trial until April 27, 2005.

Any rapprochement between the defendant and his counsel was short lived. In March, 2005, the defendant filed a further pro se motion for the "immediate withdrawal" of his counsel and for the appointment of new counsel to represent him at his trial. In an affidavit attached to this motion, the defendant disclosed that he had sent a blood-smeared letter dated March 6, 2005, to appointed counsel threatening to harm him and his family if counsel did not withdraw from the case. See note 2, *supra*. The defendant's affidavit also stated that, if the judge did not allow his motion, then at the "very first chance," the defendant "will physically assault, spit, kick, head-butt, etc." appointed counsel. To emphasize his point, the defendant added that he was "not playing around; this isn't any joke, I'm very serious! I have major mental health deficiencies, and present very serious anger management issues, due to lack of treatment." The defendant concluded his affidavit by noting that he was "not prepared" for his April 27 trial date, and did not have any documents with which to present his defense.

A hearing on the defendant's March, 2005, motion seeking appointment of new counsel (with accompanying affidavit) was held in August, 2005, by video conference. The judge read for the record the several paragraphs from the defendant's affidavit concerning his threats to counsel. Appointed counsel, who was participating in the conference, advised the defendant not to "adopt" the affidavit as something he had written. However, after several pointed questions from the judge directed to the defendant in the face of such advice of counsel, the defendant told the judge that he "absolutely" did write the threatening letter,

as the unwillingness of standby counsel to represent him, and made reference to his own "long history" of "anger management" and "Bipola[r] and impulse control" issues, explaining that it would "be in the very best of both [the defendant's and counsel's] interests" if there were no further contact between them.

adding that he "did it out of anger" and "I just said that to get him off my case because he's not doing nothing on my case. In reality, I'm not going to do nothing to him." Appointed counsel then requested that the judge allow the defendant's motion because his "ability to represent [the defendant] in an effective way has been compromised." The judge agreed to do so, but declined to appoint successor counsel, finding that the defendant had "lost [his] right to court appointed counsel."[7] In a later filed memorandum, the judge explained that "the defendant here engaged in egregious misconduct by threatening [appointed counsel] and his family with serious bodily harm and even death. As such, he has forfeited his right to proceed to trial with [appointed counsel] or any other court-appointed attorney . . . ."[8,9]

Before trial, the defendant filed a written motion for reconsideration of the judge's forfeiture ruling. In a supporting affidavit, he represented that he had been diagnosed by prison mental health clinicians as having "Intermittent Explosive Anger Disorder" as well as " 'Bipola[r]' disorder, and other mental health ailments"; that his threatening letter to counsel was written "out of anger" and "after being so frustrated," and that the defendant had no intention of carrying out any threats. He stated at least fifteen times that he was not capable of defending himself, did

---

[7]The portion of the hearing that addressed the issue of representation is brief, comprising only eleven pages of transcript.

[8]During the video conference, and before she issued her written ruling, the judge stated to the defendant that he had "waived his right to court appointed counsel period. I am not going to subject another attorney to this kind of behavior. My experience with [appointed counsel] is that he is a diligent, hard working, conscientious attorney. . . . [Therefore,] because of your threatening behavior . . . you are now representing yourself, sir, in this matter. I am not appointing further counsel because of your assaultive threatening behavior to [appointed counsel], who has been nothing but a diligent, conscientious attorney and gentleman, in my experience. . . . Therefore, you have lost your right to court appointed counsel, sir."

Nothing in the record suggests that the judge made any inquiry concerning the attorney's diligence in representing the defendant in this particular case. See note 5, *supra.*

[9]An assistant district attorney who was present for the video conference hearing asked the judge to "take judicial notice of the delays that have been occasioned by [the defendant's] willful failure to appear in court." The judge responded that she was "not prepared to do that" and that, if the Commonwealth "want[ed] to submit a written motion" to that effect, it could do so. No such motion appears in the record.

not know the law, and did not have an attorney appointed to represent him. His motion for a reconsideration was denied without a hearing.[10] Immediately prior to the trial, the judge received a letter from the Committee for Public Counsel Services (CPCS) in which it noted that the defendant had not been evaluated "on the question of his competency, despite his claim that he suffers from 'major mental health deficiencies . . . due to a lack of treatment,' " and that counsel was available to represent the defendant for this "limited purpose" and for a reconsideration of the motion denying the defendant trial counsel. The letter closed with the request that trial be continued until "new counsel can present these two [m]otions to the court." The judge took no action on the letter before trial.

Trial commenced in September, 2005. On the first day, the judge informed the parties that the clerk's office had received a telephone call that day from a CPCS attorney stating that he was available to represent the defendant for the purposes set out in the CPCS letter. The judge declined to allow the substitute representation, and reiterated her ruling that the defendant had "forfeited by that wrongdoing his right to counsel."[11] Before the venire was brought in, the defendant apologized to the judge for the threatening letter and stated that "it was a stunt that I pulled just to get him off the case. I would never do such a thing . . . ."

The defendant represented himself at trial. The jury returned verdicts of guilty of assault and battery on a guard or correction officer, assault and battery by means of a dangerous weapon, and not guilty of vandalizing with a noxious or filthy substance. The

---

[10]The defendant attempted to appeal to the Appeals Court from the judge's ruling on his motion to reconsider. A single justice of the Appeals Court issued an order stating that, because the defendant appeared to be raising a matter within the trial judge's discretion, the court was without authority to review the interlocutory order. The defendant has included in the record an "Emergency Petition to the Single Justice," appealing from the judge's forfeiture ruling on an interlocutory basis to this court. There is nothing in the record to confirm that the petition was filed; no motion was docketed, and no response from this court is in the record.

[11]As to competency, the judge stated that she found "no evidence of incompetence." Nevertheless, the judge heard testimony from a forensic psychologist whom she had ordered to speak with the defendant on the morning of trial. The forensic psychologist testified that, in his opinion, the defendant had a personality disorder, but had no "major mental illness," and that he was competent to stand trial. The judge so found.

defendant was immediately arraigned on the habitual criminal charges, which were tried before the same jury. Before opening statements, the defendant stated: "I'm requesting you to appoint me counsel, to represent me in this [trial]. I don't want to go forward." The judge denied the request, saying, "Let's go." The defendant did not make an opening statement or present any witnesses. The jury found the defendant guilty on two counts of being a habitual criminal, and he was sentenced to two concurrent terms of ten years, to begin on and after the expiration of his current sentence.

2. *Discussion.* The defendant presses two arguments on appeal. First, he claims that the doctrine of forfeiture may not be applied to deprive him of his constitutional right to assistance of counsel at trial. Second, he asserts that, even if forfeiture is recognized, his conduct was not sufficiently egregious to warrant its application to him.[12] Factual findings related to the loss of the right to counsel, such as voluntary waiver, are entitled to substantial deference, but we review claims of violations of the right to counsel de novo, making an "independent determination of the correctness of the judge's application of constitutional principle to the facts found." *Commonwealth* v. *Currie*, 388 Mass. 776, 784 (1983).

a. *The right to counsel.* "An accused's right to be represented by counsel is a fundamental component of our criminal justice system." *United States* v. *Cronic*, 466 U.S. 648, 653 (1984). See *Lavallee* v. *Justices in the Hampden Superior Court*, 442 Mass. 228, 234 (2004) ("There is no question that the right to counsel is a fundamental constitutional right . . .").[13] Because the right to the assistance of counsel is essential to individual

---

[12]We consider whether forfeiture itself and this particular application of the doctrine are consistent with the Sixth Amendment and art. 12. See note 1, *supra.* Our conclusions are based on both provisions.

[13]See G. L. c. 211D (establishing CPCS, and provisions applicable to the services of such counsel); S.J.C. Rule 3:10 (2), as appearing in 416 Mass. 1306 (1993) (in any "proceeding in which the law of the Commonwealth or the rules of this court establish a right to . . . counsel," this court requires a judge to "advise the party . . . that: (a) the law requires that counsel be available in the proceeding, at public expense if necessary and (b) if the court finds that the party wants counsel and cannot afford counsel, [CPCS] will provide counsel at no cost or at a reduced cost"); Mass. R. Crim. P. 8, as appearing in 397 Mass. 1226 (1986) ("If a defendant charged with a crime for which a sentence of imprisonment or commitment to the custody of the Department of

liberty and security, and to a fair trial, its erroneous denial can never be treated as harmless error. *Chapman* v. *California*, 386 U.S. 18, 23 & n.8 (1967). Yet, the right to assistance of counsel in criminal matters, albeit fundamental, is not absolute. See *Commonwealth* v. *Babb*, 416 Mass. 732, 735 (1994); *United States* v. *Goldberg*, 67 F.3d 1092, 1102 (3d Cir. 1995). Criminal defendants may voluntarily, and in certain circumstances involuntarily, proceed without a lawyer. Among the means by which criminal defendants may forgo their right to assistance of counsel are waiver, waiver by conduct, and forfeiture, *United States* v. *Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995), each of which we now examine.[14]

b. *Limits on the right to assistance of counsel in criminal matters.* i. *Voluntary waiver of counsel.* Just as criminal defendants have a constitutional right to be represented by counsel, individuals in criminal and civil matters have a constitutional right to represent themselves. See *Faretta* v. *California*, 422 U.S. 806, 821, 834 (1975); *Commonwealth* v. *Martin*, 425 Mass. 718, 720-721 (1997). A criminal defendant may therefore elect to waive counsel by affirmative request. To be effective, the waiver "must be voluntary" and must involve "an informed and intentional relinquishment of a known right." *Commonwealth* v. *Anderson*, 448 Mass. 548, 554 (2007), quoting *Commonwealth* v. *Torres*, 442 Mass. 554, 571 (2004). The judge must ensure by careful inquiry on the record that the waiver is "made with 'a sense of the magnitude of the undertaking and the 'disadvantages of self-representation' . . . : an awareness that there are technical rules governing the conduct of a trial, and that presenting a defense

Youth Services may be imposed initially appears in any court without counsel, the judge shall follow the procedures established in G. L. c. 211D, and in [S.J.C.] Rule 3:10").

[14]In characterizing the consequences of the defendant's behavior, the judge alternately used the terms "waiver" and "forfeiture." Conflation of the terms is common, and both may result in a criminal defendant appearing without counsel. But waiver and forfeiture are doctrinally distinct. It is "imperative that there be a clear recognition of the distinction between 'waiver by conduct,' " which requires prior warning to the defendant against misconduct, such as engaging in dilatory tactics, and "forfeiture," which does not. Courts in other jurisdictions have occasionally confused these terms, and this can "frustrate appellate review." *United States* v. *Goldberg*, 67 F.3d 1092, 1101 (3d Cir. 1995).

is not a simple matter of telling one's story . . . . In addition, the accused should have a general appreciation of the seriousness of the charge and of the penalties he may be exposed to before deciding to take a chance on his own skill." *Commonwealth* v. *Lee,* 394 Mass. 209, 216-217 (1985), quoting *Maynard* v. *Meachum,* 545 F.2d 273, 279 (1st Cir. 1976).[15] Waiver of counsel may not be presumed from a silent record. See *Carnley* v. *Cochran,* 369 U.S. 506, 516 (1962); *Commonwealth* v. *Appleby,* 389 Mass. 359, 368, cert. denied, 464 U.S. 941 (1983) (defendant cannot waive "his right to counsel by his silence," as this "might be constitutionally offensive"). See also S.J.C. Rule 3:10 (3), as appearing in 416 Mass. 1306 (1993).

ii. *Waiver of counsel by conduct (abandonment).* We have recognized the doctrine of waiver of counsel by conduct, occasionally termed abandonment of counsel. See, e.g., *Commonwealth* v. *Babb, supra*; K.B. Smith, Criminal Practice and Procedure § 19.7 (3d ed. 2007) ("Abandonment of right to counsel — By conduct"). See also *United States* v. *Woodard,* 291 F.3d 95, 106 (1st Cir. 2002) (it is "well-established" that it is within discretion of judge "to force a defendant to *choose* between proceeding to trial with an unwanted attorney and representing herself" [emphasis added]); *United States* v. *Moore,* 706 F.2d 538, 540 (5th Cir. 1983) ("persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel"). In the context of indigent defendants, waiver by conduct generally occurs when a defendant competent to waive counsel moves to remove his attorney without good cause, the motion is denied, and the judge warns the defendant that he will lose his right to an attorney if he engages in dilatory or abusive conduct towards his

---

[15]See *Commonwealth* v. *Martin,* 425 Mass. 718, 719-720 (1997). "We have not prescribed the questions that a judge must pose to an accused who desires to represent himself nor is there any 'particular piece of information that is essential to an effective waiver of counsel.' *Maynard* v. *Meachum,* 545 F.2d 273, 279 (1st Cir. 1976). . . . The focus of our review is the defendant's subjective understanding of his decision and its consequences. See *Commonwealth* v. *Lee,* 394 Mass. 209, 216-217 (1985). We must be confident that the defendant was 'adequately aware of the seriousness of the charges, the magnitude of his undertaking, the availability of advisory counsel, and the disadvantages of self-representation.' *Commonwealth* v. *Jackson,* 376 Mass. 790, 795 (1978)." *Commonwealth* v. *Barnes,* 399 Mass. 385, 390-391 (1987).

attorney. See *United States* v. *Goldberg, supra* at 1100. If the defendant then engages in the very misconduct he was warned not to commit, the misconduct may be treated "as an implied request to proceed pro se and, thus, as a waiver of the right to counsel," because the defendant had been warned of the consequences of such misconduct. *Id.*[16] Cf. *Commonwealth* v. *Babb, supra* at 734 (abandonment where "intelligent and artic-ulate" defendant sought removal of counsel without good cause, was warned by the judge of the difficulties of self-representation, thereafter physically assaulted his attorney, and judge found that defendant was attempting "to forestall his trial and disrupt the prosecution by forcing a last minute change of his court-appointed counsel").[17] The acts leading to waiver by conduct need not be violent, but they must be highly disruptive of orderly or safe court proceedings. See, e.g., *Commonwealth* v. *Appleby, supra* at 366-368 (motion for new counsel employed "as a way of delay-ing trial"); *Commonwealth* v. *Pamplona*, 58 Mass. App. Ct. 239, 240-242 (2003) (defendant, after being warned of the difficulties of self-representation, "knowingly and intelligently" insisted that "appointed counsel not represent him under any circumstances"). The key to waiver by conduct is misconduct occurring *after an express warning has been given* to the defendant about the defendant's behavior and the consequences of proceeding without counsel. See *United States* v. *Goldberg, supra* at 1100-1102

---

[16]Forgoing the right to counsel through waiver by conduct cannot be said to involve waiver in the purest sense. While defendants may "voluntarily engag[e] in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed pro se." *United States* v. *Goldberg, supra.*

[17]In the case of a nonindigent defendant who fails to retain counsel, our rules codify waiver by conduct. See S.J.C. Rule 3:10 (5) (if "a judge has found that a party is not indigent, but after a reasonable time the party has not waived counsel, procured counsel, or seasonably petitioned the court for the appointment of counsel on the basis that, after a reasonable effort, the party has been unable to retain counsel because of financial reasons, then the case may be ordered to proceed"). See *Commonwealth* v. *Delorey*, 369 Mass. 323, 330 (1975) ("the legal effect of what occurred in this case is that the defend-ant intentionally and knowingly waived his constitutional right to be represented by counsel"); *Commonwealth* v. *Godwin*, 60 Mass. App. Ct. 605, 608-609 n.6 (2004) (where "there has been a determination that the defendant is not entitled to court-appointed counsel, and where the defendant then does not secure counsel at his own expense, the effect is tantamount to a waiver of the right to be represented by counsel"); K.B. Smith, Criminal Practice and Procedure § 19.18 (3d ed. 2007) (same).

(waiver by conduct *"requires that a defendant be warned* about the consequences of his conduct, including the risks of proceeding pro se," together with finding that defendant has engaged in misconduct [emphasis added]).

iii. *Forfeiture.* Forfeiture of the constitutional right to counsel results in the defendant's being required to represent himself even though he may wish to be represented by counsel and even though he has not been warned of the dangers of proceeding on his own. See *id.* at 1100 ("Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof, and irrespective of whether the defendant intended to relinquish the right"). Forfeiture is an extreme sanction in response to extreme conduct that imperils the integrity or safety of court proceedings. See, e.g., *United States* v. *Leggett,* 162 F.3d 237 (3d Cir. 1998) (criminal defendant who physically assaulted counsel held to forfeit right to counsel).

We have previously emphasized the "power of the judiciary to control its own proceedings, the conduct of participants, the actions of officers of the court and the environment of the court," which is a power "absolutely necessary for a court to function effectively and do its job of administering justice." *Commonwealth* v. *O'Neil,* 418 Mass. 760, 764 (1994), quoting *Chief Admin. Justice of the Trial Court* v. *Labor Relations Comm'n,* 404 Mass. 53, 57 (1989).[18] "[T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Illinois* v. *Allen,* 397 U.S. 337, 343 (1970). Forfeiture is a method of court room management in extraordinary circumstances. The sanction of forfeiture recognizes that a defendant may engage in misconduct that is so serious that it may justify the loss of his right to counsel even if he was not warned that his misconduct may have that consequence. Mindful that violence by defendants

_____

[18]Similarly, the right to self-representation is "not a license to abuse the dignity of the courtroom"; forfeiture or waiver by conduct of that right is justified by the judge's powers to ensure safety and control throughout the proceedings. *Faretta* v. *California,* 422 U.S. 806, 834-835 n.46 (1975). Even though "the right of self-representation has been recognized from our beginnings," a trial judge "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Id.*

can and does occur in the court room, and taking into account considerations of the fair, efficient, and orderly administration of justice, we are not prepared to deprive judges of what may be a necessary response to exigent circumstances.

We turn now to consideration of circumstances where the doctrine of forfeiture may apply.

iv. *Standards of forfeiture.* The Federal courts and several State courts recognize the doctrine of forfeiture. We look to these jurisdictions for guidance as to the doctrine's contours. Our review discloses four considerations that generally govern whether forfeiture is appropriate.

First, forfeiture of counsel typically is applied in circumstances where a criminal defendant has had more than one appointed counsel, perhaps because in those circumstances the means of proceeding with counsel have been exhausted or found futile.[19] See, e.g., *United States* v. *Leggett, supra* at 240 (second appointed counsel); *United States* v. *McLeod,* 53 F.3d 322, 325 (11th Cir. 1995) (second appointed counsel); *People* v. *Gilchrist,* 239 A.D.2d 306 (N.Y. 1997) (fourth appointed counsel); *People* v. *Sloane,* 262 A.D.2d 431, 432 (N.Y. 1999) (fourth appointed counsel); *State* v. *Carruthers,* 35 S.W.3d 516, 538, 539 (Tenn. 2000) (fourth appointed counsel).

Second, forfeiture rarely is applied to deny a defendant representation during trial. It is more commonly invoked at other stages of a criminal matter, such as a motion for a new trial, sentencing, appeal, and pretrial proceedings. See, e.g., *United States* v. *Thompson,* 335 F.3d 782 (8th Cir. 2003), cert. denied, 540 U.S. 1134 (2004) (forfeiture of right to counsel on appeal); *United States* v. *McLeod, supra* at 326 n.13 (forfeiture expressly "limited to [defendant's] forfeiture of his right to counsel at the hearing on the motion for a new trial"); *People* v. *Gilchrist, supra* (forfeiture of right to counsel at sentencing).[20] "[T]he for-

---

[19]In light of the fundamental constitutional rights at stake, judges are appropriately hesitant to apply forfeiture where a defendant is represented by his first appointed counsel. Where trouble in an attorney-client relationship extends through multiple counsel, it is less likely that the disquiet is due to the particular attorney-client relationship, and more likely that the difficulty is due to the client's intransigence or misconduct. As we explain, judges generally give a warning to recalcitrant defendants that transforms what otherwise would be forfeiture into waiver by conduct.

[20]But see *State* v. *Carruthers,* 35 S.W.3d 516, 545-546, 550 (Tenn. 2000)

feiture of counsel at [a nontrial phase of proceedings] does not deal as serious a blow to a defendant as would the forfeiture of counsel at the trial itself." *United States* v. *Leggett, supra* at 251 n.14.

Third, forfeiture may be an appropriate response to the defendant's threats of violence or acts of violence against defense counsel or others.[21] See, e.g., *Gilchrist* v. *O'Keefe*, 260 F.3d 87, 89 (2d Cir. 2001) (forfeiture upheld at sentencing phase where defendant "punched his appointed trial counsel in the head"); *United States* v. *Leggett, supra* at 240 (forfeiture upheld at sentencing phase after defendant had attacked his second appointed counsel in court room, "punched him in the head, knocking him to the ground" and then "straddled him and began to choke, scratch and spit on him"); *United States* v. *McLeod, supra* at 325-326 & n.13 (forfeiture upheld at motion for new hearing after defendant verbally abused his appointed counsel, threatened to kill counsel, threatened to sue counsel, and attempted to persuade counsel to engage in unethical conduct); *People* v. *Gilchrist, supra* at 307 (forfeiture upheld at sentencing phase where "court properly found that, by brutally assaulting his attorney, the fourth one appointed by the court, on the original sentencing date, defendant forfeited his right to counsel"); *People* v. *Sloane*, 262 A.D.2d 431, 432 (N.Y. 1999) (forfeiture of defendant's right to counsel "by his persistent pattern of threatening, abusive, obstreperous, and uncooperative" behavior toward four appointed attorneys); *State* v. *Carruthers, supra* (forfeiture upheld at trial

---

(defendant "forfeited" and waived by "conduct" right to counsel at trial after judge warned that fifth counsel would not be appointed, and defendant made persistent and vivid death threats toward fourth appointed counsel, counsel's family, and counsel's staff, which were found to be "ploy" to delay trial).

[21]In dicta, *United States* v. *Goldberg*, 67 F.3d 1092, 1101 (3d Cir. 1995), suggests that "extremely dilatory conduct" alone may justify forfeiture. Because dilatory tactics, even when extreme, can readily be addressed by a waiver by conduct warning, we are not so persuaded. We are not aware of any case where forfeiture has been upheld solely because of the dilatory tactics of a criminal defendant. All of the cases in which forfeiture was upheld in the presence of a specific factual finding of delay or broader manipulation also involved findings of threats or violence. See, e.g., *United States* v. *McLeod*, 53 F.3d 322, 325 (11th Cir. 1995) (death threats and attempts to enlist attorney in unethical conduct); *People* v. *Sloane*, 262 A.D.2d 431, 432 (N.Y.1999) (threats and attempts to "delay the orderly administration of justice"); *State* v. *Carruthers, supra* at 539-540, 550 (threats and "ploy" to delay trial).

where defendant threatened fourth appointed counsel and judge found that these actions were "ploy" to delay trial).

The fourth and final area of general agreement we discern is that forfeiture should be a last resort in response to the most grave and deliberate misconduct. See *Gilchrist* v. *O'Keefe, supra* at 100 ("trial courts have the discretion to take intermediate steps short of complete denial of counsel" before finding defendant has forfeited his right, but forfeiture without warning might be permissible in appropriate circumstances at trial). In *State* v. *Hampton*, 208 Ariz. 241 (2004), for example, the court refused to conclude that a defendant with gang ties who had mailed credible death threats to two court-appointed counsel had forfeited the right to counsel because "forfeiture is reserved for the most severe cases of misconduct and should result only when less restrictive measures are inappropriate." *Id.* at 244 & n.4, 245. In *King* v. *Superior Court*, 107 Cal. App. 4th 929, 934 (2003), the court held that the right to counsel is subject to forfeiture only when a defendant engages in a "course of serious misconduct towards counsel" and when "lesser measures to control [a] defendant are insufficient to protect counsel and appointment of successor counsel is futile." The court concluded that "only in those rare cases of serious misconduct towards counsel where it is apparent that any lesser measures will be patently inadequate to protect counsel may the right to counsel be forfeited in the first instance" without a warning. *Id.* at 944. These cases reflect that, even when the defendant's conduct is violent or threatens violence, courts often forebear in the interests of justice from invoking the extreme sanction of forfeiture.

In our view, the four general areas of agreement outlined above offer useful guidelines for application of the principle of forfeiture. We add that, consistent with our jurisprudence, forfeiture is inapplicable where the defendant is determined mentally incompetent to waive the right to counsel and proceed pro se.[22] Trial judges have "a special 'protecting duty' to question whether

---

[22]The inapplicability of forfeiture to mentally incompetent defendants is also true of the waiver-by-conduct cases we have cited. See *Commonwealth* v. *Babb*, 416 Mass. 732 (1994) ("intelligent and articulate" defendant); *Commonwealth* v. *Appleby*, 389 Mass. 359, 366-368, cert. denied, 464 U.S. 941 (1983) ("literate, competent, and understanding" defendant); *Commonwealth* v. *Pamplona*, 58 Mass. App. Ct. 239, 241-242 (2003) (defendant acted "knowingly and intelligently").

[a mentally ill defendant's] election to proceed without counsel is grounded in an incapacity to choose sensibly." *Commonwealth* v. *Blackstone*, 19 Mass. App. Ct. 209, 212 & n.6 (1985). Where "there is some indication of mental disorder or impairment sufficient to create a 'bona fide doubt' as to the defendant's ability to make an informed decision to proceed without counsel," a "competency hearing or inquiry to waive counsel" is required, *Commonwealth* v. *Barnes*, 399 Mass. 385, 389 (1987), so that a mentally ill defendant is not forced to "stand[] helpless and alone before the court." *Massey* v. *Moore*, 348 U.S. 105, 108 (1954).

The scope of the inquiry into a mentally ill defendant's competence to waive counsel and self-represent are determined by the circumstances at hand, see *Commonwealth* v. *Barnes, supra* at 389 & n.3, 391; the inquiry must be on the record. See *Illinois* v. *Allen*, 397 U.S. 337, 351-352 (1970) (separate opinion of Douglas, J.) ("the difficult questions as to what a trial judge should do . . . with a defendant whose . . . antics may not be volitional" poses "perplexing problem which we should not reach except on a clear record"). We are, moreover, mindful of the admonition of the United States Supreme Court, which recently "caution[ed] against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself," adding that "[m]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." *Indiana* v. *Edwards*, 128 S. Ct. 2379, 2386 (2008). In short, even where a trial judge has appropriately applied the doctrine of forfeiture, it may be necessary during the proceedings to revisit the issue of the defendant's mental competency to represent himself. We now turn to the merits.

c. *Forfeiture of the defendant's right to counsel.* The Commonwealth does not contend that the defendant waived by conduct his right to assistance of counsel. Nor could it, for any such argument would fail: from the outset, the judge did not warn the defendant of the risks of his conduct.[23] *United States*

---

[23]Thus, for example, when the defendant first requested that he be appointed new counsel, the judge did not warn the defendant that he had one of

v. *Goldberg*, 67 F.3d 1092, 1101 (3d Cir. 1995) (judge who finds waiver by conduct instead of forfeiture "would be on tenuous ground" if he failed to warn defendant of consequences of further misconduct). We therefore consider whether the judge acted appropriately in determining that the defendant had forfeited his right to counsel. We first address the adequacy of process.

Because the consequences of forfeiture of counsel are so severe, the sanction of forfeiture should not be imposed until the defendant has had a full and fair opportunity at a hearing to offer evidence as to the totality of circumstances that may bear on the question whether the sanction of forfeiture is both warranted and appropriate. See *King* v. *Superior Court*, 107 Cal. App. 4th 929, 945-950 (2003) (describing due process requirements of forfeiture hearing). When the judge learns of information or allegations that, if true, may cause the judge to consider a finding of forfeiture, the judge should issue a show cause order, directing the defendant to appear at a hearing to show cause why the court should not order forfeiture of his right to appointed counsel. At such a forfeiture hearing, the defendant should be represented by counsel; if the conduct at issue is violence or threats directed at his defense counsel, separate counsel may need to be appointed for the limited purpose of representing the defendant at the forfeiture hearing. The judge should hear evidence regarding the alleged conduct that may give rise to the finding of forfeiture. The defendant should have the opportunity to offer evidence, and to cross-examine witnesses, both as to the allegations of his misconduct and the totality of the circumstances that may bear on the forfeiture finding, including his mental competency and psychological condition, any other mitigating considerations, and the willingness of appointed counsel to continue the representation. After hearing, the judge may then determine whether the defendant's conduct was so egregious as to warrant the sanction of forfeiture, and, if so, in view of the totality of circumstances, whether the sanction of forfeiture is in the interests of justice. The judge must set forth factual findings that support a forfeiture of the right to counsel. See *id.*

two choices: continue with his appointed counsel or represent himself at trial. This was before the defendant had made any threats to his lawyer. See *United States* v. *Woodard*, 291 F.3d 95, 106 (1st Cir. 2002).

The hearing in this case fell well short of what is adequate in view of the severity of the sanction of forfeiture of the right to counsel. Although the judge knew of the threats made by the defendant, which the judge rightly characterized as serious, in March, 2005, because the defendant disclosed them in his affidavit in support of his motion for appointment of new counsel, the judge did not conduct a hearing on the motion until five months later, in August, 2005. That hearing, which was conducted by video conference, was on the motion for appointment of new counsel; the judge gave no notice that she was considering a sanction, let alone a sanction of forfeiture of counsel. The hearing was perfunctory. Because no notice had been given that the judge was considering forfeiture, there was no evidence presented as to the defendant's psychological condition, the circumstances that led up to the threatening letter, or even defense counsel's willingness to continue as counsel if the alternative was that the defendant would be required to proceed without counsel.[24]

If fair notice had been given of a forfeiture hearing, and if the defendant had been given a full and fair opportunity to provide mitigating evidence at such a hearing, we cannot say with confidence that the result would have been the same. The defendant disclosed in an affidavit dated the day after he sent the blood-stained threatening letter that he had "major mental health deficiencies" and "very serious" anger management issues, "due to lack of treatment." He stated in a subsequent affidavit that he had a bipolar disorder,[25] "intermittent explosive

---

[24]The defendant, not defense counsel, disclosed to the court the threatening letter to defense counsel, even though defense counsel was ethically permitted to disclose the threat to the court. A lawyer may, consistent with his professional obligations, disclose to a judge a credible threat of violence by a client. See Mass. R. Prof. C. 1.6 (b), 426 Mass. 1322 (1998) ("A lawyer may reveal . . . such information . . . to prevent the commission of a criminal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm . . ."). We also note that five months without incident had elapsed between the threats and the hearing on the defendant's motion to dismiss. During that time the defendant apologized to the attorney and apparently conducted himself appropriately, and the defendant disavowed his stated intention to do violence.

[25]For individuals with Bipolar I Disorder, "violent behavior may occur during severe Manic Episodes or during those with psychotic features" and "[c]ompleted suicide occurs in 10%-15% of individuals with Bipolar I Disorder." American Psychiatric Association's Diagnostic and Statistical

anger disorder,"[26] and "other mental health ailments."[27] The judge acknowledged on the day the trial began that she was "aware that [the defendant] has a history of treatment" for mental illness. The forensic psychologist called by the judge on the day of trial testified that the defendant had told him that he was taking at that time "900 milligrams of Lithium and 100 milligrams of Seroquel," two potent psychotropic medications.[28] However, the judge made no inquiry whether the defendant was medicated when he sent the threatening letter to his lawyer six months earlier, and the record is silent on the question. At a minimum, there were sufficient facts that raised a bona fide question whether the defendant suffered from a mental illness that impaired his ability to control his actions, and that may have been a cause of his threatening and bizarre conduct toward his attorney.[29]

---

Manual of Mental Disorders 384 (4th ed. rev. 2000). For individuals with Bipolar II Disorder, "[c]ompleted suicide . . . is a significant risk, occurring in 10%-15% of persons with Bipolar II Disorder." *Id.* at 394.

[26]"The essential feature of Intermittent Explosive Disorder is the occurrence of discrete episodes of failure to resist aggressive impulses that result in serious assaultive acts or destruction of property . . . . Examples of serious assaultive acts include striking or otherwise hurting another person or verbally threatening to physically assault another individual . . . . The individual may describe the aggressive episodes as 'spells' or 'attacks' in which the explosive behavior is preceded by a sense of tension or arousal and is followed immediately by a sense of relief. Later the individual may feel upset, remorseful, regretful, or embarrassed about the aggressive behavior." *Id.* at 663-664.

[27]In his opening statement at trial, the defendant told the jury that he was "placed on a high security status . . . because I am a cutter. I cut my wrists." The judge ordered the remarks struck from the record.

[28]With respect to the medication the defendant was taking on the day of the trial, the forensic psychologist stated, "I assumed that that was going to be something that [the judge would] be interested in," but the judge made no further inquiries about medications. The defendant was given an opportunity to, but did not, cross examine the psychiatrist.

[29]There is no support in the record for the Commonwealth's argument that "defendant's conduct was designed to interfere with the court process." See note 9, *supra*. The judge specifically refused to find that the defendant's conduct was intended to delay. The Commonwealth conceded at oral argument that the judge did not rely on, nor refer to, the Commonwealth's assertion that the defendant's several motions for appointment of new counsel were intended to manipulate or obstruct the orderly procedure of the court. The Commonwealth was free to, but did not, oppose the many continuances throughout these proceedings. See *Commonwealth* v. *Philyaw*, 55 Mass. App. Ct. 730, 735 (2002) (when evaluating motion for continuance, judge may consider, and Commonwealth may base its opposition on, factors such as whether other motions for continuances have been filed and allowed).

Threats of violence by a defendant (or others) are antithetical to the work of justice, and judges can and must take decisive measures to control any such threats. Nothing in our conclusions or reasoning should be read to suggest otherwise. Our concern is one of process. Before a judge orders the forfeiture of the defendant's constitutional right to appointed counsel based on the defendant's misconduct, the judge must give notice of and conduct a hearing in which the defendant is given a full and fair opportunity to show why so severe a sanction should not be imposed. Because the defendant was not given that opportunity, and because we cannot say with confidence that the result may not have been different had he been given that opportunity, we reverse the judgments.

3. *Conclusion.* We reverse the judgments on the habitual criminal charges, reverse the judgments on the assault charges, and remand the case to the Superior Court for a new trial on the charges of assault and battery on a correction officer and assault and battery by means of a dangerous weapon. The defendant must, if he so requests, be appointed counsel for his retrial. Retrial shall take place before a judge different from the one who presided at the defendant's two prior trials, the assault case and the habitual criminal case.

*So ordered.*