*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 6**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

CURTIS MICHAEL ALLGIER,
*Appellant.*

No. 20130021
Filed January 23, 2015

Third District, Salt Lake
The Honorable Paul G. Maughan
No. 071904711

Attorneys:

Robert L. Stott, Christopher D. Ballard, Salt Lake City, for appellee

Craig L. Pankratz, David M. Corbett, Salt Lake City, for appellant

PER CURIAM:

¶1   This matter is before the court on a motion to withdraw filed by the appellant's appellate counsel. We grant the motion and conclude that the appellant has repeatedly engaged in extreme dilatory, disruptive, and threatening conduct that constitutes a forfeiture of his right to counsel for the limited remainder of the proceedings on appeal.

¶2   In 2007, Curtis Michael Allgier was charged with aggravated murder, a capital offense. He also was charged with disarming a police officer, aggravated escape, and aggravated robbery. Mr. Allgier received appointed counsel from the Salt Lake Legal Defender Association (LDA). On multiple occasions over the course of the next three and a half years, LDA moved for permission to withdraw as Mr. Allgier's counsel. The district court eventually granted the motion and appointed new counsel. Prior to trial, Mr. Allgier apparently became dissatisfied with his new counsel and filed a motion to represent himself.  He eventually entered into a plea agreement and received a sentence of life without the possibility of parole. When the sentence was entered, the record did not include any timely motion to withdraw the plea.

¶3   Mr. Allgier appealed, and the district court appointed LDA to represent him on appeal. LDA filed a notice that it had a conflict of interest and referred the case to an attorney not affiliated with its office. Less than a month after that attorney had entered his appearance, Mr. Allgier filed a pro se motion to remand for appointment of new counsel. Shortly thereafter, his appointed attorney filed a motion to withdraw based on a claimed "irreparable breakdown in the attorney client relationship." The State opposed the motion, and the attorney provided a reply to the response that included further information regarding the reasons for his motion. He explained that Mr. Allgier had filed a bar complaint against him and had stated "it [would] get very ugly" for the attorney if he did not file a motion to withdraw. Mr. Allgier's bar complaint further stated that he was "trying to be nice, but [would] resort to other means of removal if [the attorney thought] he could sell [Mr. Allgier] out. . . . he don't want to learn how much I don't give a damn." The attorney was understandably reluctant to specifically divulge any threats Mr. Allgier had directed at him within the context of otherwise privileged attorney-client communications, but his motion to withdraw nonetheless indicated he had received "rather more intense communications directly from [Mr. Allgier]" and that the bar complaint's "less than veiled threats . . . are tempered and mild by comparison." A few days later, Mr. Allgier filed a pro se pleading entitled "Defendant/Appellant's response to [his attorney's] cowardly response to State's response." The pleading included allegations that the attorney had a conflict of interest arising from the referral by LDA, asserted that the attorney had refused to raise issues that Mr. Allgier had demanded that he present on appeal, and stated that Mr. Allgier would accept only female counsel.

¶4   This court issued the following order in response to the attorney's motion to withdraw:

> The motion is granted. The Court nonetheless expresses concern about the possibility of manipulation of the judicial process and will carefully scrutinize any future motion by counsel to withdraw or by the Appellant to disqualify counsel. This matter is temporarily remanded to the district court for appointment of new counsel.

The district court appointed two new attorneys to represent Mr. Allgier on appeal. Within a few weeks, he filed yet another pro se motion to remove his new counsel. That motion stated that Mr.

Allgier "refuse[d] these quacks forced upon [him]," and demanded that a new appointment of counsel be made by a different district court judge. Mr. Allgier claimed that his new counsel had refused to communicate with him, but he admitted that one of them had attempted to meet with him and that he had refused to do so because the timing of the visit was during his recreation hour. And, he again complained that his new counsel had refused to raise all the issues that he desired to present on appeal.

¶5    This court denied Mr. Allgier's motion on August 28, 2013. That order noted the concerns expressed by the prior order and stated:

> Any further motions seeking to disqualify counsel or for counsel to withdraw initially will be reviewed by the Court to ascertain whether they adequately allege and document a substantial basis to warrant the disqualification or withdrawal of counsel. Neither Appellant's counsel, nor the Appellee, will be obligated to respond to any such motion unless this Court requests a response. Absent any action by the Court, such a motion will be deemed denied within fourteen days of its receipt.

Mr. Allgier subsequently filed three more pro se motions to remove counsel that violated the requirements of the court's directive that any such motion be supported by adequately documented allegations. Those motions consistently referred to counsel in demeaning and derogatory terms, and they were hostile and threatening in tone. The following statement in one of the motions is typical of the allegations:  "they [Mr. Allgier's appointed attorneys] are the dumbest ass clowns I've ever had the EXTREME dishonorable displeasure of being forced to know were even somehow on the planet, let alone incompetently and ineffectively misrepresented by[,] and NEVER . . . will they have the honor of being in my Aryan GOD presence or having any kind of contact with me period!!"  The motion also included a copy of a letter that one of the attorneys had sent to Mr. Allgier, which detailed efforts he had made to research and advance legitimate arguments on appeal. The copy of the letter provided to the court was covered with Mr. Allgier's scathing and hostile handwritten notes, some of which apparently reflected a belief that his attorneys were required to raise any arguments he desired even after being informed that

those arguments were contrary to established law.[1] The court reviewed the motions and could not discern any credible or adequately documented ground for disqualification of counsel. Accordingly, it declined to take any action on those motions, and they were deemed denied by the terms of its August 28 order.

¶6 Mr. Allgier's new counsel filed motions to supplement the record and to remand for a hearing pursuant to rule 23B of the Rules of Appellate Procedure. The motion to supplement was granted in part and the rule 23B motion was deferred until plenary review. The motion to supplement resulted in an order from this court that directed the Department of Corrections, the Attorney General's Office, and the district court to attempt to verify whether Mr. Allgier had filed a timely motion to withdraw his plea.[2]

---

[1] In their own motion to withdraw, the attorneys redacted the letter to avoid disclosure of privileged communications. Needless to say, Mr. Allgier's attachment of the letter to a pleading filed in the public appellate record of this case waived the privilege with respect to that letter.

[2] The motion to supplement ultimately was denied, but it discredited Mr. Allgier's repeated allegations that his attorneys have been dilatory and have refused to communicate with him. First, despite the absence of any indication in the record that a timely motion to withdraw the plea had been filed, the motion to supplement demonstrated new counsel was aware of Mr. Allgier's claim that he had filed such a motion. Second, the motion resulted in an order from this court directing that a search for the alleged motion to withdraw the appeal be conducted. If credible documentation of the motion to withdraw had been discovered, it likely would have resulted in a remand to require the district court to consider that motion. The filing of the rule 23B motion also is inconsistent with the picture painted by Mr. Allgier's allegations of dilatory conduct. Such motions require appellate defense counsel to discover grounds for claims of ineffective assistance of trial counsel that are not apparent in the record and otherwise would not be susceptible to review on appeal. While the mere filing of such a motion does not constitute a guarantee of appellate counsel's diligence, any attorney who is truly uninterested in a client's welfare would have little motivation to devote the time and effort necessary to research and prepare one.

¶7    Mr. Allgier's new counsel also filed the principal brief on appeal.  The State filed its responsive brief.  Then new counsel filed this motion to withdraw.  The motion to withdraw is based on assertions that are very similar to the motion to withdraw filed by Mr. Allgier's first appellate attorney.  The motion states that an irreparable breakdown in the attorney client relationship has occurred, that Mr. Allgier has refused to communicate with new counsel, and that Mr. Allgier has ordered the Department of Corrections to remove new counsel from his visiting list and to refuse delivery of correspondence sent by new counsel.  It also avers that Mr. Allgier has "leveled threats against counsel," including statements that "he knows how to find people outside of prison," and has mailed documents to one of his new attorneys' home address, which has never been provided to Mr. Allgier.  The motion also states that "to avoid revealing confidential information, and in order to prevent potential prejudice to Mr. Allgier, counsel will not share any additional information with the Court unless the Court specifically requests additional information."

¶8    We directed the State to respond to the motion.  That response concedes that counsel should be permitted to withdraw based on Mr. Allgier's "persistent threats to his appointed counsel and his pattern of disruptive behavior."  But it also argues Mr. Allgier has forfeited his right to counsel at this late stage of the appellate proceedings.

¶9    Attorneys who are appointed to represent criminal defendants perform an indispensable service to the administration of the criminal justice system.  Without those attorneys, many defendants would be deprived of significant constitutional rights.  At least some of those defendants may be very difficult to work with and unwilling to accept responsibility for their own actions.  Some defendants may mistakenly assume that they are entitled to the appointed counsel of their choosing, and having not been given their preference, they become resentful toward the appointed attorney.  This is work that warrants gratitude from a client, yet it is work that actually may receive less gratitude, and doing it may require an exceptionally thick skin.  But appointed defense attorneys should not be required to fear for their own safety or that of their professional associates or families.

¶10 As we have previously observed, forfeiture is a drastic measure.  Thus, a defendant must engage in extreme conduct involving dilatory or abusive behavior before it may be imposed. *See State v. Pedockie*, 2006 UT 28, ¶ 32, 137 P.3d 716. We conclude that

making threats to the welfare of appointed counsel may constitute extreme conduct justifying a forfeiture of counsel. Whether a particular course of threatening behavior merits forfeiture will vary according to the particular case. And even when conduct legitimately could be viewed as a forfeiture, courts may err on the side of solicitude to the right to counsel and permit a substitution of counsel. Indeed, notwithstanding Mr. Allgier's threats to his prior appellate counsel, which might have merited a forfeiture of his right to counsel, this court elected to allow him another opportunity to collaborate with new counsel in prosecuting his appeal.

¶11 We acknowledge that many of the cases involving a forfeiture of counsel may have involved somewhat more extreme conduct (at least more extreme than the conduct of which we are presently aware in this case),[3] but most of those cases involved forfeitures during trial proceedings. One case of forfeiture on appeal involved a specific death threat, but the forfeiture in that case resulted in the loss of any assistance on appeal. *See United States v. Thompson*, 335 F.3d 782, 784 (8th Cir. 2003). The defendant failed to file his brief and the appeal was dismissed, with the consequence that he was precluded in a subsequent appeal from raising any arguments he could have presented in the first appeal. *Id.* at 785. As explained below, the potential consequences, if any, of a loss of counsel in this case are far less severe. We accordingly agree with the Supreme Judicial Court of Massachusetts that the circumstances warranting a determination of forfeiture may vary according to the procedural context. *See Commonwealth v. Means*, 907 N.E.2d 646, 659–61 (Mass. 2009), and the cases cited therein. Although the right to counsel persists throughout trial and the first direct appeal of right, the consequences of deeming that right forfeited plainly vary according to the stage of the proceedings. A forfeiture shortly after the commencement of trial without a declaration of mistrial could have a severe impact on the defendant's opportunity to rely on the presumption of innocence and to avoid a conviction in the first instance. An appeal presents a narrower opportunity for a defendant who has pled or been found guilty to challenge isolated aspects of the trial proceedings. Appellate proceedings are also far

---

[3] The court is reluctant to seek further and more specific information regarding threats to counsel because it is concerned that action might further endanger counsel.

less dependent on regular communication between counsel and the defendant.

¶12 In this particular case, Mr. Allgier pled guilty, which substantially reduced the available issues on appeal, and he already has received the fundamental benefits of counsel on appeal in the form of a brief submitted by counsel that addresses those challenges. The only remaining stages of appellate review in which counsel would participate are the filing of a reply brief and oral argument. The purpose of a reply brief is to permit a response to contentions raised by an appellee for the first time in its brief in opposition. Consequently, in the absence of any new contentions, attorneys on appeal legitimately may forgo the filing of a reply brief without depriving their clients of the right to counsel. Oral argument is for the benefit of the court. It traditionally conducts argument for cases presented to it, but it retains the discretion to decline to conduct oral argument when it determines that argument is not essential. Mr. Allgier has no constitutional right to orally expound on arguments already presented in his brief. Thus, the practical scope of any remaining right to counsel on appeal in this particular case is much more limited than at any other phase of the trial or appellate proceedings. Finally, this court can take additional steps to alleviate the consequences of the loss of counsel at this stage of the proceedings by carefully scrutinizing any contentions that may have been raised in the State's brief that were not already addressed in the initial brief on appeal.

¶13 We conclude that Mr. Allgier has engaged in persistent dilatory conduct by filing multiple pro se motions that did not contain adequate allegations and documentation of a substantial basis to warrant the disqualification of counsel. The course of his conduct throughout the appeal has caused delays in the appellate proceedings. And it appears similar conduct may have caused delays in the trial proceedings. More importantly, Mr. Allgier has made a series of threats to multiple appointed appellate attorneys, and his pro se pleadings provide the court with no reason to assume that the appointment of another attorney would avoid similar problems.[4]

_____

[4] Appointment of new counsel on appeal, even if warranted, could generate additional complications in the briefing process. It is unclear whether new appellate counsel may be required to adopt the arguments of another attorney with whom they are not profes-
(continued...)

¶14 Under the unique procedural posture presented by this appeal, where the only remaining step in the proceedings is the filing of a reply brief, Mr. Allgier has forfeited his right to counsel for the remainder of the appellate proceedings. He may file a pro se reply brief within thirty days of the date he receives this decision. That brief must comply with applicable word or page limits or it will be refused by the Clerk of Court. Mr. Allgier should also strive to comply with all other applicable rules to the extent he is able. The court will not conduct oral argument. It will take this case under advisement upon the filing of a timely reply brief or the failure to timely file that brief.

──────────

[4](...continued)
sionally associated. We might be required to discard the briefs already filed and restart briefing, or at least permit new counsel to raise new arguments in the reply (followed by a sur-reply by the State), in a manner that would constitute a de facto restart of the briefing process—with no assurance that Mr. Allgier would allow new counsel to reach the same stage of briefing that his current counsel managed to achieve. Mr. Allgier already has made it clear that he perceives a need for, and likely would demand, presentation of arguments that are not susceptible to appellate review, which could generate sources of disputes with new appellate counsel. In any event, there is a real prospect that an attempt to appoint yet another attorney to represent Mr. Allgier on appeal would leave him in a worse, rather than a better, position.