MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 36
Docket:       Cum-14-224
Argued:       September 16, 2015
Decided:      February 25, 2016

Panel:        ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## STATE OF MAINE

v.

## JOSHUA R. NISBET

HJELM, J.

[¶1]  Joshua R. Nisbet was convicted of robbery (Class A), 17-A M.R.S. § 651(1)(E) (2015), in the Unified Criminal Docket (Cumberland County, *Warren, J.*) after a jury trial.  Nisbet proceeded to trial without representation by counsel after the court permitted the withdrawal of two attorneys who had represented him jointly as his fourth and fifth attorneys, because Nisbet had made a direct and express threat to cause serious bodily harm to one of those attorneys in the presence of the other.  Based on the combined effect of that threat, Nisbet's deliberate unwillingness to work with those attorneys' predecessors, and the absence of any prospect that he would work cooperatively with successor counsel, the court determined that Nisbet had forfeited his right to counsel and required Nisbet to proceed to trial as an unrepresented defendant, although with the assistance of standby counsel.  Nisbet appeals the judgment and challenges the

2

court's determination that he forfeited his right to counsel. In this matter of first impression in Maine, we conclude that in circumstances of egregious misconduct affecting the exercise of the right to counsel, such as those presented here, an accused can forfeit that right, and that the court did not err in determining that Nisbet's conduct rose to the level that constituted a forfeiture. We also conclude alternatively that the record establishes that through his misconduct, Nisbet waived his right to counsel by implication. Accordingly, we affirm.

## I. BACKGROUND

[¶2] Because the procedural history of this case is critical to the legal analysis, we review it in some detail.

[¶3] On July 18, 2011, the State charged Nisbet by criminal complaint with robbery (Class A), *see* 17-A M.R.S. § 651(1)(E), alleging that he committed the crime at a convenience store in South Portland while brandishing a knife. Nisbet was arrested two days later. After he was indicted in September 2011, the case proceeded to a four-day jury trial in late April and early May 2014, which resulted in a guilty verdict. The court subsequently sentenced Nisbet to a fourteen-year prison term, with all but seven years suspended and four years of probation.

[¶4] Five attorneys represented Nisbet during the three years the case was pending in the trial court. Following Nisbet's initial appearance on July 20, 2011, the court (*MG Kennedy, J.*) appointed Attorney Randall Bates to represent Nisbet.

The case was initially scheduled for trial in November 2011, but was then continued to January 2012. On November 16, 2011, Attorney Bates moved to withdraw as counsel, stating in his motion,

> Defendant has made it abundantly clear that he no longer believes that Counsel is representing Defendant vigorously enough. Defendant has made several phone calls from the jail elaborating on his loss of confidence in Counsel, despite Counsel having represented him in the past . . . . [T]he relationship between Defendant and Counsel has irrevocably broken down.

The court (*Cole, J.*) granted the motion on December 9, 2011, appointed Attorney Robert LeBrasseur to represent Nisbet, and set a new trial date of February 2012.

[¶5] In early January 2012, Attorney LeBrasseur filed various discovery motions and a motion to suppress. The court (*Wheeler, J.*) adjudicated those motions after a hearing held in March 2012. Earlier, on February 21, 2012, Nisbet had written a letter directed to Attorney LeBrasseur but sent it to the court, requesting to be appointed co-counsel, explaining, "I don't want to be told I can't speak on my behalf or ask questions . . . ." After two more continuances, one of which was requested by the State, a new trial date was set for May 2012. In late April 2012, Attorney LeBrasseur filed a motion to withdraw as Nisbet's counsel, claiming that Nisbet had been hostile during telephone conversations with members of his staff and that consequently the attorney-client relationship had eroded. The court (*Cole, J.*) granted Attorney LeBrasseur's motion on May 7,

4

2012, and that day appointed Attorney Kristine Hanly to represent Nisbet. The court also set a new trial date of July 2012.

[¶6] Attorney Hanly filed a discovery request soon after her appointment to the case, and she filed two successive motions to continue to allow more time for her to review the "extensive" discovery and to further conduct a pretrial investigation. Attorney Hanly also filed a notice of alibi, *see* U.C.D.R.P.– Cumberland County 16A(b)(3); M.R.U. Crim. P. 16A(b)(3),[1] and a motion for sanctions based on allegations that the State failed to produce discovery. The court (*Moskowitz, J.*) heard and denied the motion, concluding that the information at issue had been provided, did not exist, or was available independently to the defense.

[¶7] In late January 2013, Attorney Hanly filed a motion for leave to withdraw, stating that "due to comments and conduct of the client, Counsel believes that the attorney-client relationship has been irretrievably damaged." At a hearing on the motion, Nisbet agreed to Attorney Hanly's withdrawal and told the court that he was in the process of retaining an attorney. The court granted the motion to withdraw but before doing so, told Nisbet, "You so far have had three excellent lawyers representing you, and we're about to deal with your third

---

[1] As of January 1, 2015, the Cumberland County Unified Criminal Docket Rules of Procedure were superseded by the Maine Rules of Unified Criminal Procedure. M.R.U. Crim. P. 1(e)(1).

lawyer's motion[] to withdraw . . . . It's important that you cooperate with the next attorney that gets on board with you, whether it's someone your family hires or whether it's someone the [c]ourt appoints." In a subsequent written order memorializing the ruling, the court stated, "In no event will the trial in this matter be delayed. If retained counsel does not enter an appearance by 2-8-13, the court will appoint a fourth and <u>final</u> attorney to represent Mr. Nisbet." (Emphasis in original.) At the hearing on Attorney Hanly's motion to withdraw, the court also took up discovery issues, which Attorney Hanly described as originating with Nisbet's belief that police officers had falsified reports and that technological evidence and videos existed to prove that allegation.

[¶8] Despite Nisbet's suggestion to the court that he would soon be represented by retained counsel, no attorney entered an appearance, and so on February 26, 2013, Attorneys Neale Duffett and Jon Gale were appointed as co-counsel to represent Nisbet. They filed a motion to continue the trial date, and the court (*Warren, J.*) granted the motion.

[¶9] At a status conference held in August 2013, Nisbet filed a motion to remove Attorneys Duffett and Gale as his attorneys. The court engaged in a colloquy with Nisbet in which the court reminded Nisbet that the prior order

> said that you would get your final attorneys when [the court] relieved [Attorney Hanly]. . . . [Y]ou were on notice that we weren't going to keep replacing attorneys even if you asked for that and that you might

be in a situation where you'd have to represent yourself if you really want to unload your attorneys.

The court also told Nisbet that he was "at the end of the line on attorneys" and explained the dangers of proceeding without counsel. The court advised Nisbet that the prosecutor who would try the case for the State and Attorneys Duffett and Gale all were experienced lawyers:

> They know [the] rules of evidence. They know the court procedures and . . . have done lots of trials. I don't know whether you've ever represented yourself or have any legal training or have had any courtroom experience where you've been [a party] in a trial . . . . And so, if you haven't had that, you're at a tremendous disadvantage if you are representing yourself . . . . [T]hese are the fifth and none of them are inexperienced attorneys. They're all—some of our most experienced, better criminal defense attorneys . . . [Their] collective experience dwarfs that of anyone else we could assign at this point. So, I don't see that a dissatisfaction with an attorney is going to change if we keep adding additional attorneys or keep replacing them.

Nisbet then told the court that he wanted to proceed with counsel and withdrew his motion to remove Attorneys Duffett and Gale. The court formally denied the motion and rescheduled the trial for October 2013.

[¶10] Between late September and early November 2013, the parties were in court four times to address further discovery requests pressed by Nisbet himself. This included Nisbet's request to obtain recordings of 28 months of telephone calls from the jail where he was being held, and the issuance of dozens of subpoenas for documents that, according to the State, did not exist or it did not have. Attorneys

Duffett and Gale, and Nisbet himself, requested a continuance of trial, and Nisbet told the court that he wanted a continuance for "as long as it takes to get this discovery." During one of the hearings, Nisbet also wanted the record to show that there was "bad blood" between his attorneys and him. In response to Nisbet's complaints about his attorneys, the court told Nisbet that it "can't simply keep replacing lawyers for you . . . . [I]f there is no good reason to [replace] them with lawyers number 6 and 7, then I think you would be in a position of being told you might have to represent yourself." The court also told Nisbet that it was willing to address any legitimate claims that his attorneys were not representing him properly.

[¶11] On November 7, 2013, even though the court had made clear several times already that it would not appoint successor counsel, Nisbet filed a second request to remove Duffett and Gale. At a hearing held eight days later, Nisbet told the court that he was dissatisfied with his attorneys' work, but after the court closed the hearing so that the State was not present, he stated, "I take it back. I will work with them and we will continue and hopefully things will work out better." At both that hearing and another one held in early December, Nisbet continued to press his claim that records had been falsified and that he needed to obtain extensive discovery to address the issue. He told the court that "the allegations I've made are serious. And someone should be looking into them . . . . Find the

stuff. And nobody wants to help me do this." Nisbet also stated that he intended to file material with the court against his attorneys' advice.

[¶12] Attorneys Duffett and Gale filed their own motion to withdraw from the case on December 17, 2013, stating that Nisbet insisted that they engage in unethical conduct; that Nisbet was convinced that they were working against his interests, even suggesting to them that they should sit at the prosecutor's table; and that despite repeated efforts to work productively with Nisbet, the attorney-client relationship had broken down. The court held a hearing on the motion on January 2, 2014. Before Nisbet arrived for the hearing, the court and Attorneys Duffett and Gale had a discussion on the record about the situation, and, in response to the court's inquiry about whether appointment of new counsel would be helpful, Attorney Gale stated that that approach would probably be futile because Nisbet would likely continue to insist on having counsel pursue a course that would violate the Maine Rules of Professional Conduct. Then, while Nisbet was present, Nisbet stated to the court several times that he understood the court's earlier admonitions that if Attorneys Duffett and Gale were allowed to withdraw, he would have to represent himself. He told the court, "Well, I guess I'll keep my lawyers. You have extorted me. Good job." The court also reviewed with Nisbet the available options if Attorneys Duffett and Gale were given leave to withdraw, which included Nisbet proceeding without formal representation but with an

"attorney advisor," or appointing new counsel, although the court suggested there was no reason to believe that Nisbet could work with new counsel when he could not do so with present counsel.

[¶13]  The court deferred any action on the motion to withdraw in order to first address Nisbet's competence, and it therefore ordered a psychological evaluation.  *See* 15 M.R.S. § 101-D(1) (2015).  After the examination was conducted and a report was filed with the court, the court held a preliminary hearing on January 21, 2014.  At the hearing, the court referred to the finding in the report that Nisbet was competent but that he had beliefs about the criminal justice system that, in the court's words, "may be reaching a delusional quality at times."

[¶14]  The court again discussed with Nisbet the options for representation, which included proceeding without counsel, which the court recognized as an alternative that Nisbet opposed; appointing new counsel; or requiring Attorneys Duffett and Gale to continue as counsel "against their will."   The court specifically explained to Nisbet the disadvantages of proceeding without counsel:

> You would have to—with all the advantages that I think I have previously outlined to you, would be picking the jury, giving opening statements, questioning witnesses, calling witnesses, present evidence, giving closing statements all on your own but with standby counsel, meaning that if you had a question about what to do or you needed some legal question, you could consult the lawyers.

Nisbet responded by telling the court, "I have been to trial, I know what happens. You're, like, talking, like, I have never been there . . . . Your Honor, I'm not representing myself so you can save the speech because I'm not going to stand up and say I waive effective counsel—you guys played your game, it is not going to happen." Nisbet told the court, "I want [Attorney Gale] and [Attorney Duffett] to do what they are supposed to do and represent my case the way I want to present it. That is it." He repeated that he wanted them "[t]o represent the case the way I want to present it . . . represent me the way I want to represent the case—to try the case the way I want them to try it."

[¶15] A competency hearing was held two days later, on January 23. After considering the examiner's report and testimony, including the examiner's opinion that Nisbet did not have a delusional disorder and had the ability to cooperate with counsel if he agreed with counsel's approach to the case, the court found that he was competent.

[¶16] The court then addressed the still-pending motion to withdraw. Attorney Duffett told the court that Nisbet was insisting that counsel follow his instructions and present a conspiracy-based defense that, in Attorney Duffett's opinion, would require them to violate the Maine Rules of Professional Conduct. The court stated that it had "no confidence that lawyers 6, 7, 8 or 9 would end up with any better relationship with Mr. Nisbet than the lawyers who have already

been withdrawn or been discharged." The court denied the motion to withdraw, explaining that Nisbet's "loss of confidence" and "lack of trust" in his attorneys did not justify withdrawal over Nisbet's objection.

[¶17] The next hearing was held one week later, when, without the State being present, the court reviewed Nisbet's demand that 60 witnesses be subpoenaed for trial. Then, with the State's participation, the court denied a motion to dismiss that Nisbet had filed based in part on alleged discovery violations, noting that the State had complied with its discovery obligations but that Nisbet refused to accept the assertions of the State and others that other material he wanted did not exist.

[¶18] In mid-February, the court ordered that the trial would begin on April 28 and that it would not allow any further continuances. One week later, on February 27, 2014, Attorneys Duffett and Gale filed a second motion to withdraw. In their motion, they stated that since the most recent court hearing they had spent considerable time with Nisbet at the county jail to prepare for trial but that their relationship with him "progressively deteriorated." They further asserted that when they both met with Nisbet on February 26, Nisbet loudly argued with Attorney Gale as they were listening to a recording, prompting Attorney Gale to tell Nisbet to be quiet so they could hear it. Nisbet then reportedly told Attorney Gale,

> Don't fucking tell me to be quiet . . . I know you are working against me. I will never forget what you've done. You have fucked with the wrong guy. I don't care if I get 15 years, when I get out, I will be outside your house with a high-powered B.B. gun and I will take your eye out. I'm not getting life. I'll never forget. I'm coming after you whenever I get out. I will never forget you.

According to the motion, Nisbet continued to make "identical and similar threats" as Attorney Duffett, who was present when Nisbet made the threat, pounded on the door to get help from the jail staff. The motion also stated that Nisbet previously had been convicted for aggravated assault.

[¶19] The court held a hearing on the motion to withdraw on the day after it was filed. After hearing from both attorneys and from Nisbet, the court found that Nisbet had engaged in the conduct described in the motion—a finding that Nisbet does not contest here—and that Nisbet's threat was serious enough that both attorneys could reasonably believe their safety was at risk. The court stated that under those circumstances, it did not "see how [it] could keep [counsel] in the case." During the hearing, the court reviewed the remaining options, which included determining that Nisbet had "in effect waived or forfeited [his] right to counsel and we can go to trial," or appointing new counsel without "much expectation that things would be better" with successor counsel. The court invited Nisbet to propose other alternatives, and Nisbet responded that the court "cannot let them out."

[¶20]  After taking under advisement the question of what would happen in light of counsel's impending withdrawal, the court issued a written decision determining that Nisbet had forfeited his right to counsel.  The court reiterated its conclusion that Attorneys Duffett and Gale "cannot be expected to remain on the case" because, while Attorney Duffett was present, Nisbet threatened Attorney Gale in a way that "entitled [them] to take the threat seriously" and that "they reasonably believe their safety is at risk."  The court further found that both attorneys "are known as highly experienced and competent defense counsel who have had particular success working with difficult clients" and that it "had absolutely no basis to conclude that the substitution of yet another attorney or attorneys would be any more successful."

[¶21]  The court also found that the length of time the case had been pending—more than two and one-half years, during which Nisbet was being held in custody—was attributable to Nisbet because he "consistently insisted on pursuing an extremely time-consuming strategy of seeking increasingly far-fetched discovery" and was unwilling to prepare for trial itself.  Under the circumstances, the court concluded that "any further delay of trial would be unacceptable."  The court then concluded that Nisbet had forfeited his right to counsel, explaining,

14

The right to counsel, as fundamental as it is, cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair, efficient and effective administration of justice . . . .

Absent an adequate reason to require that counsel be removed, courts may present recalcitrant defendants with the choice between remaining with their existing counsel or representing themselves at trial . . . . In this case, requiring Nisbet to proceed to trial with [A]ttorneys Gale and Duffett is no longer an option as a result of Nisbet's own conduct. The court concludes that under the circumstances Nisbet has forfeited his right to counsel . . . . Nisbet's behavior, including his threats against counsel, cannot be rewarded with yet another continuance and yet another attorney, particularly when there is absolutely no basis to expect that a sixth attorney would be any more successful in getting along with the client.

The court understands this ruling is over Nisbet's objection, and it takes this step with extreme reluctance. Given Nisbet's behavior and the inordinate amount of time this case has been delayed, this court sees no other alternative under the circumstances.

(Citations omitted.)

[¶22] Although the court declined to appoint counsel to succeed Attorneys Duffett and Gale, the court did designate two standby attorneys to assist Nisbet during the trial. They did so during the trial and the resulting sentencing hearing. After the trial and imposition of sentence, Nisbet—represented by new counsel—filed a timely appeal.

## II. DISCUSSION

[¶23] The sole issue presented here is whether the court erred by requiring Nisbet to proceed to trial as an unrepresented defendant.[2] We address the jurisprudence that bears on an accused's right to counsel, the doctrines of express waiver and waiver by conduct, and the forfeiture of the right to counsel, and we apply those principles to the circumstances of this case.

[¶24] The right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 6 of the Maine Constitution, which are "commensurate" with each other. *State v. Watson*, 2006 ME 80, ¶ 14, 900 A.2d 702. As the United States Supreme Court has said, "[i]n an adversary system of criminal justice, there is no right more essential than the right to the assistance of counsel," *see Lakeside v. Oregon*, 435 U.S. 333, 341 (1978), and we have recognized the right of representation by counsel as "a right of the highest order," *Watson*, 2006 ME 80, ¶ 14, 900 A.2d 702 (citing *United States v. Proctor*, 166 F.3d 396, 402 (1st Cir. 1999)). Because the right to counsel is fundamental to a fair system of criminal justice and serves as the pathway through which other constitutional protections are realized, the wrongful denial of an accused's right to counsel is by itself prejudicial error. *See Chapman v. California,* 386 U.S. 18, 23

---

[2] Because the issue on appeal does not extend to the assistance provided by standby counsel, we do not address the arguments raised in an amicus brief filed by The Maine Association of Criminal Defense Lawyers relating to the role of standby counsel.

n.8 (1967). The level of protection afforded the right to counsel is illustrated in the well-established doctrine that a court must "indulge every reasonable presumption against waiver" of that right. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (quotation marks omitted); *see also Brewer v. Williams*, 430 U.S. 387, 404 (1977); *Watson*, 2006 ME 80, ¶ 15, 900 A.2d 702.

[¶25] There are three distinct ways, however, in which an accused who has the right to counsel can or must proceed without legal representation: express waiver, waiver by conduct, and forfeiture. We discuss those doctrines in turn.

A.     Express Waiver

[¶26] Exercise of the right to counsel is not mandatory: the holder of that right may waive it through an intentional, knowing, and voluntarily choice to give up that right and proceed without legal representation. *Johnson*, 304 U.S. at 464; *State v. Hill*, 2014 ME 16, ¶¶ 5, 10, 86 A.3d 628. The waiver of one's right to counsel is usually accomplished by means of an express verbal request and a resulting colloquy with the court to ensure that the waiver meets constitutional standards. *See United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995); *Watson*, 2006 ME 80, ¶ 18, 900 A.2d 702. Here, Nisbet made clear to the court a number of times that he wanted to be represented by counsel, and so he did not expressly waive his right to counsel.

## B.    Waiver by Conduct

[¶27]  The right to counsel is not absolute.  An accused waives the right to counsel by conduct—that is, by implication rather than by an express request—when he has been warned that certain conduct will be viewed as an implied waiver of the right to counsel, but then persists in that conduct, thereby triggering the implied waiver.  *See, e.g., Goldberg*, 67 F.3d at 1100; *Commonwealth v. Means*, 907 N.E.2d 646, 658 (Mass. 2009) ("The key to waiver by conduct is misconduct occurring after an express warning has been given to the defendant about the defendant's behavior and the consequences of proceeding without counsel." (alteration omitted)); *State v. Carruthers*, 35 S.W.3d 516, 547-48 (Tenn. 2000) (citing cases).  In waiving the right to counsel by conduct, the defendant does not affirmatively or expressly waive that right, but rather intentionally engages in conduct that he has been warned will result in a loss of the right.  One of the elements underlying the loss of the right to counsel under these circumstances is a *waiver* of that right, which requires that the defendant have knowledge of the right and an understanding of the consequences of waiving it.  Therefore, for a defendant to waive the right to counsel by conduct, the process requires the court to have advised the defendant of the risks faced by proceeding without counsel, just as the court must advise a defendant of those risks when that defendant expressly waives the right to counsel.  *See Goldberg*, 67 F.3d at 1100.

[¶28] We have invoked the doctrine of waiver by conduct, although without using that appellation, when we observed that a non-indigent defendant's "stubborn failure" to hire counsel can amount to a waiver of the right to representation "if the court also finds that the defendant fully understood the right to counsel and the dangers of self-representation." *Watson*, 2006 ME 80, ¶ 27, 900 A.2d 702. In that situation, the defendant must have been advised of the right to secure counsel and have had a reasonable opportunity to do so; the defendant must have "unreasonably failed" to retain or apply for counsel in a timely way; and "the defendant's background, experience, conduct and other pertinent information [must] establish that the defendant fully apprehended the nature of the charges against him, the perils of self-representation, and the requirements that [would] be placed upon him." *Id.* ¶ 28 (quotation marks omitted).

[¶29] Here, in declining to appoint successor counsel to represent Nisbet after allowing Attorneys Duffet and Gale to withdraw, the court determined that Nisbet had forfeited his right to counsel, and for the reasons we discuss below, that determination was not erroneous. The circumstances of this case, however, also establish that Nisbet impliedly waived his right to counsel as a result of his conduct, as that doctrine is explained in *Watson*.

[¶30] At several hearings—including the January 21 hearing that occurred less than three weeks before Nisbet threatened Attorney Gale—the court explained

to Nisbet his right to counsel, the benefits of legal representation, and the disadvantages of proceeding without counsel. As part of this explanation, the court reviewed the specific aspects of the trial process that Nisbet would face on his own if he did not have counsel. The court had also told Nisbet that he would be at a "tremendous disadvantage" if he were to proceed to trial unrepresented. Nisbet's responses and other statements to the court establish that he understood the role of counsel, based in part on his own experience in the court system. Further, Nisbet's repeated statements that he wanted to be represented by counsel also clearly demonstrate his appreciation of the importance of that representation. These circumstances establish the foundation for a constitutionally sufficient waiver, namely, an explanation by the court about the nature and the perils of proceeding without counsel, and the defendant's comprehension of that information. *See id.* ¶¶ 24-26.

[¶31] The waiver of that known right is then established through Nisbet's conduct that led to the withdrawal of Attorneys Duffett and Gale. The court had stressed to Nisbet the importance of cooperating with the efforts of counsel to represent his interests, and the court expressly and repeatedly had made clear to Nisbet that it would not appoint counsel to succeed Attorneys Duffett and Gale. This was tantamount to a warning to Nisbet that if he wanted continuing legal representation, he needed to work productively with counsel. Despite those

communications and the court's express and repeated warnings that it would not appoint any other attorney to represent him, Nisbet did what he was effectively warned not to do: through his direct and vivid threat to cause serious bodily harm to one of his attorneys while his other attorney was present, Nisbet willfully engaged in conduct that, based on the clear warnings that the court had given to him, he must have known would inevitably result in the withdrawal of his attorneys and the loss of his right to counsel.

[¶32]  Under these circumstances, Nisbet's explicit threat to assault counsel constitutes waiver by conduct.

[¶33]  Although the record demonstrates that Nisbet engaged in conduct that, by necessary implication, constituted a waiver of his right to counsel, the court ultimately concluded that Nisbet had *forfeited* his right to counsel, and so we examine the doctrine of forfeiture and then apply that analysis to the particular circumstances of this case.

C.    Forfeiture

[¶34]    Forfeiture occurs when the defendant engages in "serious misconduct" that abuses the right to counsel. *Goldberg*, 67 F.3d at 1102.  Because forfeiture of the right to counsel is not predicated on a knowing intention to relinquish it, *id.*, a forfeiture fundamentally differs from a waiver, which results from an intentional, knowing, and voluntarily decision not to exercise the right,

whether that waiver is express or implied through conduct. In contrast, forfeiture of a defendant's constitutional right to counsel is an "extreme sanction," *Means*, 907 N.E.2d at 652,[3] flowing from the defendant's abuse or manipulation of that right and results in the defendant being required to represent himself even though he has not waived counsel and may still want legal representation.

[¶35] Courts have held that a defendant may forfeit the right to counsel after assaulting his attorney or engaging in abusive or threatening conduct toward counsel. *See United States v. Thomas*, 357 F.3d 357, 363-65 (3d Cir. 2004); *United States v. Leggett*, 162 F.3d 237, 249-51 (3d Cir. 1998); *Goldberg*, 67 F.3d at 1100, 1102; *United States v. McLeod*, 53 F.3d 322, 326 (11th Cir. 1995); *Commonwealth v. Lucarelli*, 971 A.2d 1173, 1179-80 (Pa. 2009); *Bultron v. State*, 897 A.2d 758, 766 (Del. 2006). A defendant has also been deemed to have forfeited the right to counsel when the defendant manipulates the right in a way that substantially interferes with the orderly and proper development of a case toward or at trial. *See Lucarelli*, 971 A.2d at 1179 (recognizing that if a defendant can never forfeit his right to counsel, a defendant who refused to engage in the

---

[3] Although Nisbet argues otherwise, we do not take the Massachusetts Supreme Judicial Court's use of the word "sanction" to suggest that forfeiture is a stand-alone penalty for the defendant's misconduct. *See Commonwealth v. Means*, 907 N.E.2d 646, 652 (Mass. 2009). Rather, the context of the court's word choice makes clear that it was referring to a judicial response that adapts the course of the legal proceedings to the defendant's choice to engage in misconduct that undermines the legitimate exercise of the right to counsel. *See id.*

colloquy process necessary for waiver "could impermissibly clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice"); *Carruthers*, 35 S.W.3d at 550 (finding forfeiture where the defendant's threat against counsel was a "ploy" to delay the trial). *See generally* Wayne R. LaFave et al., *Criminal Procedure* § 11.3(c) (2d ed. 1999) ("What these courts have held, in effect, is that the state's interest in maintaining an orderly trial schedule and the defendant's negligence, indifference, or possibly purposeful delaying tactic, combined to justify a forfeiture of defendant's right to counsel . . . .").

[¶36]  Nisbet argues that Maine should not join those jurisdictions whose courts have held that the right to counsel is subject to forfeiture.  We disagree. First, contrary to Nisbet's argument and as several federal circuit courts have held, the forfeiture doctrine is not contrary to United States Supreme Court jurisprudence.  *See Wilkerson v. Klem*, 412 F.3d 449, 454 (3d Cir. 2005); *Gilchrist v. O'Keefe*, 260 F.3d 87, 97 (2d Cir. 2001).  Second, the magnitude of the constitutional right to counsel does not by itself insulate it from forfeiture when the party holding that right abuses it.  *See United States v. White*, 529 F.2d 1390, 1393 (8th Cir. 1976) ("Of course, the right to counsel is a shield, not a sword.").  Just as other rights of constitutional magnitude can be lost, *see, e.g.*, *Illinois v. Allen*, 397 U.S. 337, 343 (1970) (holding that a defendant can lose the right to be present at trial for disorderly and disruptive behavior); *State v. Murphy*, 2010 ME 140,

¶ 17, 10 A.3d 697 (concluding that the trial court did not deprive a defendant of due process when it excluded the defendant from the courtroom after she had been continually disruptive and disrespectful toward the court and the jury), so too can the right to counsel.

[¶37]    As the Massachusetts Supreme Judicial Court has observed, "[f]orfeiture is a method of court room management in extraordinary circumstances," because it allows a court "to control its own proceedings, the conduct of participants, the actions of officers of the court and the environment of the court, which is a power absolutely necessary for a court to function effectively and do its job of administering justice." *Means*, 907 N.E.2d at 658-59 (quotation marks omitted).

[¶38]  For these reasons, we join "[t]he [f]ederal courts and several [s]tate courts" that have recognized the doctrine of forfeiture of the right to counsel. *See id.* at 659.[4]   Because, however, of the inherent importance of the right to counsel and its interrelationship with other fundamental rights such as the right to a fair trial, a defendant may be deemed to forfeit that right only in circumstances where, in the context of that defendant's relationship with counsel, he has engaged

---

[4]   In doing so, we do not sanction the loss of a fundamental constitutional right merely to create a means for the court to function effectively.  Rather, it is a recognized doctrine that is based upon the principle that the right to counsel is not absolute and is subject to forfeiture as a result of egregious misconduct by the defendant.

24

in extremely serious misconduct that directly undermines the integrity and effectiveness of that right or frustrates the judicial process in a substantial way. Further, forfeiture requires a determination by the court that there are no lesser judicial responses that can reasonably be expected to prevent or ameliorate the ongoing effects of the defendant's misconduct. *See id.* at 660-61 (stating that "forfeiture should be a last resort in response to the most grave and deliberate misconduct").

[¶39] We therefore hold that under circumstances arising from a defendant's willful and egregious conduct that undermines or exploits the right to counsel with substantial detriment to the judicial process, and where there is no meaningful available alternative, the court may determine that the accused has forfeited the right to counsel and thereby require the defendant to proceed without counsel.[5]

---

[5] It bears noting that several courts have also pointed to the importance of providing the defendant a "full and fair opportunity" to be heard on whether forfeiture is a proper judicial response to the particular circumstances of a case. *See Means*, 907 N.E.2d at 662; *King v. Superior Court*, 107 Cal. App. 4th 929, 945-50 (2003). Elements of a fair opportunity to be heard consist of proper notice and representation by counsel at that hearing, which may include the limited appointment of counsel to represent the defendant at that hearing if the defendant's alleged misconduct involves acts directed against present counsel. *Means*, 907 N.E.2d at 662. Here, Nisbet did not have separate counsel at the hearing that resulted in the order allowing Attorneys Duffett and Gale to withdraw. Rather, the participants were Nisbet and the two attorneys. At that hearing, the court heard sworn statements from those three individuals and made factual findings based on that information. Nisbet, however, does not challenge the immediate process that resulted in the court's finding that his attorneys' allegations of threatening conduct were true, and he does not contest the court's findings here. Rather, starting from that predicate, Nisbet's argument addresses the legal *effects* of his conduct, namely, whether an accused can forfeit the right to counsel in the first place, and, if so, whether Nisbet did so here.

D.    Nisbet's Forfeiture of His Right to Counsel

[¶40]   We must next examine the court's forfeiture determination in the context of the extended pretrial process, to determine whether Nisbet engaged in misconduct of a magnitude sufficient to warrant consideration of forfeiture and whether the court erred by concluding that it had no meaningful alternative to forfeiture.  We review the court's underlying factual findings for clear error and its conclusions of law de novo.[6]  *Cf. State v. Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125; *Watson*, 2006 ME 80, ¶ 31, 900 A.2d 702.

[¶41]   The court's determination that Nisbet forfeited his right to counsel rested on a constellation of factors specific to Nisbet's conduct and its effects. The starting point for the court's analysis was that because Nisbet made a direct and graphic threat of future physical harm to Attorney Gale in Attorney Duffett's presence, thereby putting both in reasonable fear for their safety, they could not continue to represent Nisbet.  We fully agree that no attorney—particularly including appointed counsel, whose willingness to accept appointments in criminal

---

[6]   Although Nisbet does not challenge the court's order allowing Attorneys Duffett and Gale to withdraw, he contends that the trial court erred by finding that he was responsible for the "serious breakdown" of his relationships with the first three attorneys appointed to represent him and that those attorneys were to blame.  From this, he argues that the number of attorneys who represented him is not a reflection of an inability to work productively with counsel and that the court should have appointed another attorney to succeed Attorneys Duffett and Gale.  We conclude, however, that each time an attorney was given leave to withdraw as Nisbet's counsel, the court acted within its discretion.  *Cf. State v. Dunbar*, 2008 ME 182, ¶ 5, 960 A.2d 1173 (reviewing the denial of a motion to withdraw for an abuse of discretion).

cases is critical to the vitality of the right to counsel and whose work contains a strong element of public service—should be expected to tolerate threatening conduct from a client. The court acted well within its discretion by permitting Attorneys Duffett and Gale to withdraw, and Nisbet does not argue otherwise.

[¶42] The court then properly gauged the effect of Nisbet's abusive conduct and the resulting withdrawal of counsel in the context of the pretrial development of the case. The court found that Nisbet had engaged in a pattern of intransigent behavior because of his "obsessive[]" and "extremely time-consuming" focus on obtaining "increasingly far-fetched discovery." That finding is supported by the record. Although not specifically cited by the court, the extent of Nisbet's eagerness to delay trial is revealed by his statement, made to the court at a discovery hearing held in late September 2013, when the case had already been pending for more than two years, that he wanted the trial continued for as long as it took him to receive the discovery. The groundless nature of Nisbet's strategy is demonstrated by the collective view of Attorneys Duffett and Gale that it would require them to violate the ethical requirements imposed on lawyers by the Rules of Professional Responsibility. Over the course of many hearings where Nisbet received considerable process, he explicitly told the court that he would require his attorneys to present the case in the way *he* wanted it presented, even though Attorneys Duffett and Gale concluded that if *they* followed Nisbet's direction as he

insisted, they would exceed the ethical bounds prescribed by the Rules of Professional Conduct. This demonstrates that Nisbet's interest was to have legal representation in name only and that he himself demanded to control all manner of the defense irrespective of its objective merit or ethical propriety.[7]

[¶43] The court then properly proceeded to consider the prospect of appointing replacement counsel but found, as it had several times previously, "absolutely no basis" to expect that replacement counsel would have greater success in overcoming Nisbet's "behavior, attitude, and distrust" that characterized his relationship with Attorneys Duffett and Gale. That conclusion was not erroneous. Although Nisbet was capable of acting cooperatively with counsel, he had chosen a different course directly resulting in the fatal rupture of his relationships with five attorneys, all of whom the court described as "highly experienced and competent," including Attorneys Duffett and Gale, who had demonstrated "particular success working with difficult clients."

[¶44] When Nisbet engaged in the abusive conduct that directly resulted in the withdrawal of Attorneys Duffett and Gale, the case had been pending for well over two years. The court set a trial date in late April, and it appropriately stated

---

[7] An example of this attitude is found early on in the proceedings, when Nisbet requested the court to appoint him as "co-counsel." We have held, however, that a defendant does not have the right to dual or hybrid representation shared with an attorney. *See State v. Hofland*, 2012 ME 129, ¶ 16, 58 A.3d 1023, *cert. denied*, 2013 U.S. LEXIS 6146 (Oct. 7, 2013). Therefore, Nisbet was not entitled to act as his own attorney when he was also represented by counsel.

that there would be no further continuances. Given the length of time the case had been stalled in a pretrial posture and Nisbet's direct responsibility for that situation, the court did not err by concluding that the reasons for Nisbet's unwillingness to work productively with counsel would not be cured by the appointment of successor counsel, and that the additional delays that would inevitably result from appointment of successor counsel were "unacceptable."

[¶45]  We therefore conclude that the court took into account the factors that are central to the forfeiture analysis: Nisbet's ongoing unwillingness to cooperate with counsel despite his capacity to do so; the court's considerable efforts to fulfill his right to counsel through the successive appointment of experienced and capable lawyers; Nisbet's focus on groundless issues that did not have a reasonable prospect to be material in this case, causing substantial and unacceptable delays of trial; and his evident motivation to continue to engage in conduct that would delay the trial indefinitely.  Under these circumstances, because Nisbet's prior conduct demonstrated that his demand for counsel would constitute a further manipulation of the judicial process, the court did not err by concluding that Nisbet had forfeited his right to counsel and that despite its "extreme reluctance" to do so, it had no alternative but to require Nisbet to proceed to trial without formal representation.

[¶46]  It is important to recognize that in the context of considering the question of forfeiture, the court took important steps to safeguard Nisbet's interests

despite his exposure to the loss of his right to counsel. For example, with commendable patience and persistence, at several hearings the court explained to Nisbet the importance of cooperating with counsel. After a "final" order of appointment was issued in February 2013, the court repeatedly told Nisbet that if Attorneys Duffett and Gale withdrew, he would be required to proceed to trial without legal representation. The court also gave Nisbet a detailed explanation of the trial process, the responsibilities that an attorney would manage at trial, and the substantial disadvantages that Nisbet would face were he to proceed to trial without counsel. Those are the same exchanges that also met the requirements necessary for a proper waiver of counsel. *See Watson*, 2006 ME 80, ¶¶ 24-26, 900 A.2d 702. Therefore, when he threatened Attorney Gale in the presence of Attorney Duffett, Nisbet was fully on notice of the repercussions of the withdrawal of the attorneys then representing him, but he nonetheless created a situation where that withdrawal was inevitable.

[¶47] As another example of the care with which the court treated Nisbet's right to counsel, it ordered a competency evaluation and then held a competency hearing before it would even consider Attorney Duffett's and Attorney Gale's first motion to withdraw. It proceeded to address the pending issue of representation only after determining that Nisbet was competent. As the Massachusetts Supreme Judicial Court observed, a mentally incompetent defendant should not be required

30

to proceed without counsel by forfeiture or otherwise. *Means*, 907 N.E.2d at 661. Here, the court addressed this important consideration.

[¶48] Additionally, when the court ultimately determined that Nisbet had forfeited his right to counsel, it appointed standby counsel to assist Nisbet. In this way, the court safeguarded Nisbet's interests as much as possible under the circumstances.

[¶49] We conclude that the court, faced with significant challenges in getting this case to trial, exhibited commendable sensitivity to Nisbet's fundamental right to counsel and in a measured way determined, only when no alternatives remained, that Nisbet had forfeited that right. The court acted within its authority by doing so.

## III. CONCLUSION

[¶50] Nisbet waived his right to counsel because he willfully engaged in misconduct that the court appropriately warned him would result in the loss of representation, and because when he engaged in the misconduct that directly resulted in the withdrawal of his attorneys, Nisbet understood his right to counsel and the perils of proceeding without representation. Nisbet also forfeited his right to counsel because he engaged in egregious misconduct that manipulated that right in a way that was substantially detrimental to the court's ability to administer justice, and because no lesser alternative was available to the court. Therefore,

under each analysis, the court did not err by requiring Nisbet to proceed to trial without legal representation.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jamesa J. Drake, Esq., Drake Law, LLC, Auburn, for appellant Joshua R. Nisbet

Stephanie Anderson, District Attorney, and Robert L. Ellis, Asst. Dist. Atty., Prosecutorial District No. Two, Portland, for appellee State of Maine

Janet T. Mills, Attorney General, and Leanne Robbin, Asst. Atty. Gen., Office of the Attorney General, Augusta, for amicus curiae Maine Office of the Attorney General

Patrick Lyons, Stud. Atty., and Christopher Northrop, Esq., Cumberland Legal Aid Clinic, Portland, and David Bobrow, Esq., Bedard and Bobrow, PC, Eliot, for amicus curiae Maine Association of Criminal Defense Lawyers

Zachary L. Heiden, Esq., American Civil Liberties Union of Maine Foundation, Portland, for amicus curiae American Civil Liberties Union of Maine Foundation

**At oral argument:**

Jamesa J. Drake, Esq., for appellant Joshua R. Nisbet

Leanne Robbin, Asst. Atty. Gen., for appellee State of Maine