DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**K.R.,** the father,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES** and
**STATEWIDE GUARDIAN AD LITEM OFFICE,**
Appellees.

No. 4D22-3378

[July 26, 2023]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Yael Gamm, Judge; L.T. Case No. 2021-00706CJ-DP.

Thomas J. Butler of Thomas Butler, P.A., Miami Beach, for appellant.

Carolyn Schwarz of Children's Legal Services, Fort Lauderdale, for appellee Department of Children and Families.

Luke Newman of Statewide Guardian ad Litem Office Defending Best Interests Project, Luke Newman, P.A., Tallahassee, and Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Krystle Celine Cacci, Senior Attorney, Appellate Division, Statewide Guardian ad Litem Office, Tallahassee, for appellee Guardian ad Litem on behalf of B.R. and M.R.

FORST, J.

Appellant K.R. appeals the trial court's order terminating his parental rights. The sole issue before us is whether the trial court erred in determining that Appellant forfeited his right to court-appointed trial counsel. Finding no error, we affirm.

**Background**

The Department of Children and Families ("DCF") initially filed a dependency petition against Appellant with respect to his two minor children. After the children were adjudicated dependent based on Appellant's neglect and prospective neglect, DCF filed a termination of parental rights ("TPR") petition.

Appellant was determined to be indigent and entitled to court-appointed counsel. During the course of the dependency and termination proceedings, Appellant was appointed at least five different attorneys by the trial court, each of whom moved to withdraw from representation. Three of the attorneys explicitly moved to withdraw based on "irreconcilable differences with [Appellant] over the handling of the case." Prior to the withdrawal of the second attorney, Appellant inadvertently sent an email to the trial court's judicial assistant that appears to be intended to be directed to his counsel. The message states "Thank you very much to make me waste my time . . . I rather represent myself that [sic] a lawyer the [sic] work for the state attorney. God have mercy and [sic] all of you when you guys have to answer to him. AMEN."

Prior to a pre-trial advisory hearing, the fifth appointed attorney moved to withdraw. Counsel stated Appellant was "extremely aggressive," would "get up in my face," and refused to follow the attorney's legal advice ("he's telling me 'I'm not going to do anything you tell me to do because I don't have to'"). Counsel surmised that "he needs someone [who's] just going to listen to him berate them and tell them he doesn't have to do anything, and thinking somehow, that's the way to win a court case."

In granting the fifth attorney's motion to withdraw, the trial court noted it did not have any more lawyers to appoint to represent Appellant. The court asked whether Appellant could afford his own private attorney. Appellant answered he could not. The trial court then informed Appellant:

> [I]f you are not willing to follow the advice of lawyers who are trained and have expertise in these matters, then you are not protecting your own rights. You think you are, but you are not. You are refusing to allow anyone to protect your rights.
>
> The reason that we keep appointing you lawyers is to ensure that your legal rights as a citizen, including your rights [for] representation, are protected. But, if you continue to refuse to work with your lawyers, you're leaving me without options. All right?
>
> Despite your words, that you do not wish to represent yourself, despite your words, your actions are telling me that you wish to represent yourself because you will not accept the appropriate representation, advice and procedures of appointed counsel.

2

And you cannot afford to retain a private lawyer. So, the only thing left for you, sir, is to represent yourself. That is your right.

I understand your words are telling me that is not your choice, but [your] actions are telling me that that is, one hundred percent, affirmatively, your choice.

Prior to the TPR trial, Appellant informed the trial court that he could not proceed without a lawyer. The trial court responded:

Your refusal to follow their advice has led to increasing aggression between yourself and your lawyer, putting both lawyers at risk for their safety. The Court at this time is out of lawyers for appointment for you. As we discussed previously, your options are still to hire your own private counsel or to represent yourself. You are present today without privately retained counsel, and therefore the Court will infer that you have chosen to represent yourself today.

. . . .

Through your actions, as we discussed before, you have chosen to represent yourself. You have never verbally requested self-representation and I acknowledge that. However, the Court does find that you have been provided repeatedly with effective assistance of counsel; you have repeatedly denied your effective assistance of counsel, their ability to further represent you. Those five previous court-appointed lawyers were appointed for you to avoid a pro se representation, as you indicated an intention to proceed with court-appointed representation. However, your conduct over the course of those representations has indicated to the Court that you have no other desire than to represent yourself through the course of your actions and conduct. So, I do find your assertions that you do not wish to proceed without a lawyer completely lacking in credibility.

The Court does find that the – your actions throughout the course of these proceedings further support your internal desire for self-representation.

After the TPR trial where Appellant represented himself, the trial court entered final judgment terminating Appellant's parental rights, noting

3

Appellant made little effort to comply with the court's reunification case plan. Appellant rejected or ignored referrals for psychiatric services, parenting classes and drug testing. Moreover, he repeatedly violated a court order limiting his interaction with his children to supervised visitation. In addition to finding support for the TPR petition, the court's order once again addressed the legal representation issue, stating:

> [T]his Court appointed numerous attorneys to represent [Appellant] during both the Dependency proceedings, as well as the TPR proceedings. His continued aggression and oppositional conduct towards his lawyers resulted in [Appellant's] discharge of several attorneys, as well as the withdrawal of several attorneys. As this continuing cycle was resulting in ongoing delays for the permanency for these children, this Court, following numerous hearings on the matter, concluded [Appellant] was repeatedly provided with effective assistance of counsel throughout the proceedings, but has engaged in conduct effectively evidencing a desire for self-representation despite his verbal assertions to the contrary.

Appellant appeals the TPR final judgment, arguing the trial court's failure to appoint trial counsel without charge to Appellant constituted a denial of due process.

## Analysis

In determining whether a trial court appropriately finds a litigant has forfeited rights via conduct, the abuse of discretion standard applies. *See McCray v. State*, 71 So. 3d 848, 878 (Fla. 2011) (addressing the physical removal of a criminal defendant, during trial, from the courtroom). However, "[w]e review a claim of deprivation of procedural due process de novo." *I.T. v. Dep't of Child. & Fams.*, 338 So. 3d 6, 9 (Fla. 3d DCA 2022).

Section 39.013, Florida Statutes (2022), governs a parent's right to court-appointed counsel in a chapter 39 action and explains the procedure for waiving that right, as follows:

> At each stage of the proceedings under this chapter, the court shall advise the parents of the right to counsel. The court shall appoint counsel for indigent parents. The court shall ascertain whether the right to counsel is understood. When right to counsel is waived, the court shall determine whether the waiver is knowing and intelligent. The court shall enter

its findings in writing with respect to the appointment or waiver of counsel for indigent parents or the waiver of counsel by nonindigent parents.

§ 39.013(9)(a), Fla. Stat. (2022).

There is no dispute that, during the duration of the proceedings below, Appellant was "indigent" and thus entitled to the appointment of court-appointed counsel. Therefore, under section 39.013(9)(a), the trial court had the responsibility to ensure that any waiver of counsel was "knowing and intelligent."

Appellant, supported by DCF's "concession of error," maintains the trial court erred when it found he waived his right to counsel without putting its findings in writing. The Statewide Guardian ad Litem Office's ("GAL") answer brief, which was filed on behalf of Appellant's children, does not directly respond to the "in writing" argument. Nonetheless, the GAL's answer brief contends that, while Appellant did not knowingly and voluntarily *waive* his right to court-appointed counsel, his inability to work with appointed counsel constituted a *forfeiture* of that right.

Given DCF's concession that the trial court did not make a waiver finding in writing, and a lack of a direct response to the "in writing" argument from the GAL's answer brief, the only question is whether—as the GAL's answer brief contends—Appellant forfeited his right to court-appointed counsel.

It is important to recognize a distinction between forfeiture and waiver of the right to counsel. A waiver "results from an intentional, knowing, and voluntarily [sic] decision not to exercise the right." *State v. Nisbet*, 134 A.3d 840, 853 (Me. 2016). In contrast, a forfeiture is an extreme measure that flows "from the defendant's abuse or manipulation of [the right to counsel] and results in the defendant being required to represent himself even though he has not waived counsel and may still want legal representation." *Id.* (citing *Commonwealth v. Means*, 907 N.E.2d 646, 652 (Mass. 2009)). Forfeiture is a "judicial response that adapts the course of the legal proceedings to *the defendant's choice* to engage in misconduct that undermines the legitimate exercise of the right to counsel." *Id.* at 853 n.3 (emphasis added) (citing *Means*, 907 N.E.2d at 652).

The right to counsel in termination proceedings, derived from the due process clause in the Florida Constitution, is not equivalent to the right to counsel in criminal proceedings, which is derived from the Sixth Amendment in the U.S. Constitution. *See E.T. v. State Dep't of Child. &*

*Fams.*, 930 So. 2d 721, 726 (Fla. 4th DCA 2006) ("The liberty interest at stake in criminal cases is simply not equivalent to that involved in custody cases involving children."); *see also N.S.H. v. Fla. Dep't of Child. & Fam. Servs.*, 843 So. 2d 898, 902 (Fla. 2003) ("Although we do not minimize the significant interests at stake in parental rights termination proceedings, the essential difference between termination proceedings and both criminal proceedings and civil commitment proceedings is that termination proceedings do not involve the risk of loss of *physical liberty*."). Nonetheless, case law regarding forfeiture of the right to counsel in criminal cases is instructive in examining forfeiture of this right in parental rights cases.

Under the United States Constitution, criminal defendants have a right to counsel and representation. In a typical criminal *waiver* of court-appointed counsel case, the focus of the court is whether the waiver is knowingly, intelligently, and voluntarily made. *E.g.*, *Potts v. State*, 718 So. 2d 757, 759–60 (Fla. 1998). The trial court is obligated to conduct a *Faretta*[1] hearing and to otherwise warn a litigant of the dangers of proceeding pro se.

However, federal courts have held defendants can *forfeit* that right based on their conduct during the proceedings. *See, e.g.*, *United States v. Goldberg,* 67 F.3d 1092, 1100 (3d Cir. 1995) ("Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." (quoted in *Bowden v. State*, 150 So. 3d 264, 267 (Fla. 1st DCA 2014))); *United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995) (despite expressing concern that the defendant was not warned that his misbehavior could result in the loss of court-appointed counsel, the court nevertheless held that, "under certain circumstances, a defendant who is abusive toward his attorney may forfeit his right to counsel," even without warning); *United States v. White*, 529 F.2d 1390, 1393 (8th Cir. 1976) ("[T]he right to counsel is a shield, not a sword. A defendant has no right to manipulate his right for the purpose of delaying and disrupting the trial.").

At least one Florida court has also held a criminal defendant's conduct may be severe enough to warrant forfeiture of his right to court-appointed

---

[1] *Faretta v. California,* 422 U.S. 806 (1975). A *Faretta* hearing is required in criminal cases in which a defendant chooses self-representation, to determine whether waiver of the right to counsel was knowingly and intelligently made. *Id.* at 834.

counsel.  In *Jackson v. State*, 2 So. 3d 1036 (Fla. 3d DCA 2009), the Third District affirmed a defendant's conviction for aggravated battery based in part on his forfeiture of his right to court-appointed counsel.  *Id.* at 1037. The court noted the forfeiture was a result of "his recalcitrance, antagonism and even personal attacks upon each of a lengthy series of court-appointed attorneys, all of whom were required to withdraw, [which] rendered it obvious that he simply would not permit himself to be represented by anyone."  *Id.*

Because forfeiture is an extreme measure only justified by a defendant's serious misconduct, upon a declaration of forfeiture, a trial court is not obligated to conduct a *Faretta* hearing or to otherwise warn a litigant of the dangers of proceeding pro se.  *See Bowden*, 150 So. 3d at 266 ("[S]ince the mid–1990s, state and federal courts have found that a defendant may forfeit his right to counsel such that the procedural safeguards typically associated with waiver of counsel do not apply."); *Watson v. State*, 718 So. 2d 253, 253–54 (Fla. 2d DCA 1998) (finding no error in the trial court's determination that, "[a]fter the withdrawal of six different court-appointed attorneys," the defendant had forfeited his right to trial counsel (as distinct from sentencing counsel)), *receded from on other grounds by Waller v. State*, 911 So. 2d 226, 228 & n.2 (Fla. 2d DCA 2005).

Given that a defendant has a greater right to counsel in a criminal proceeding than a parent has in a parental rights case, if a defendant can forfeit his or her right to counsel, then so too may a parent.  *See W.S. v. Dep't of Child. & Fams.*, 31 So. 3d 329, 330-31 (Fla. 4th DCA 2010) ("[T]ermination proceedings do not require all of the protections of a criminal trial.").  In reviewing a trial court's determination that an indigent parent *forfeited* the right to court-appointed counsel in a dependency or TPR case, the test is whether there was sufficient evidence of abuse and non-cooperation on the part of the parent that "rendered it obvious that he simply would not permit himself to be represented by anyone and amounted to a binding forfeiture or waiver of that right."  *Jackson*, 2 So. 3d at 1037.  Thus, if the client abuses the right to counsel, the client loses court-appointed counsel.

There is a fine line between being a "difficult client" and being a client whose conduct forfeits the right to court-appointed counsel.  Here, at least three court-appointed counsel withdrew from representing Appellant due to "irreconcilable differences," with the most recent withdrawing attorney claiming Appellant informed counsel that "I'm not going to do anything you tell me to do because I don't have to."  Counsel explained Appellant was "extremely aggressive," and would "get up in my face."  Under the circumstances present in this case, we find no error in the trial court's

proceeding with the TPR trial without appointing a sixth attorney to represent Appellant.

## Conclusion

As detailed above, the trial court did not err in determining that, by his expressions of hostility and non-cooperation directed to multiple court-appointed counsel, Appellant forfeited his right to court-appointed counsel. Moreover, Appellant's appeal does not address the merits of the trial court's TPR final judgment, and we have found nothing in the record supporting a reversal of that decision.

*Affirmed.*

KLINGENSMITH, C.J., and ARTAU, J., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

8